In re Todd Stuart PAYNE and Zeta Gay Payne, Debtors.

**Clyde Hardesty, Trustee, Plaintiff,**

v.

**The Huntington National Bank, et al., Defendants.**

**Bankruptcy No. 09–59437.
Adversary No. 09–2467.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division, at Columbus.

March 31, 2011.

Amelia A. Bower, Brian D. Wood, Columbus, OH, for Defendant The Huntington National Bank (Electronic Service).

Mortgage Electronic Registration Systems, Inc., c/o CT Corporation System, Cleveland, OH.

## *MEMORANDUM OPINION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT*

C. KATHRYN PRESTON, Bankruptcy Judge.

### I. Introduction

This cause came on for consideration of the Plaintiff Trustee's Motion for Summary Judgment ("Motion") (Doc. No. 15) filed by Clyde Hardesty ("Trustee"), the Chapter 7 Trustee in the underlying bankruptcy case of Todd Stuart Payne and Zeta Gay Payne (collectively, "Debtors" or "Paynes"). The Trustee commenced this adversary proceeding against The Huntington National Bank ("Huntington") and Mortgage Electronic Registration Systems, Inc. ("MERS") to determine the extent of a mortgage on certain real property owned by the Debtors. Before the Court are the Motion, Huntington's brief in opposition (Doc. No. 16);[1] and the Trustee's reply brief (Doc. 17). The Court, having considered the record and the arguments of the parties, makes the following findings of fact and conclusions of law.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (K). Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

Before they commenced their bankruptcy case on August 18, 2009 ("Petition

William Todd Drown, Mount Vernon, OH, for Trustee/Plaintiff (Electronic Service).

---

1. On March 16, 2010, the Court entered an order (Doc. 10) granting the Trustee's motion for default judgment against MERS. Thus, the Trustee seeks summary judgment only against Huntington.

Date"), the Paynes granted a mortgage in favor of Huntington ("Mortgage") on their real property located at 6321 Cimarron Road, Mount Perry, Ohio 43760 ("Property"). Because the Mortgage's certificate of acknowledgment identified both spouses as having acknowledged their signatures on the Mortgage, this adversary proceeding, unlike so many others, is not one in which the Trustee seeks to avoid a mortgage based on a blank and therefore defective certificate of acknowledgment. Rather, the Trustee contends that Mrs. Payne is not identified in the body of the Mortgage as a grantor or mortgagor—or, to use the terminology of the Mortgage, as a "Borrower"—and that her signing the Mortgage failed to convey a mortgage on her undivided one-half interest in the Property.[2] In response, Huntington argues that Mrs. Payne granted a mortgage on her interest in the Property in favor of Huntington.

For the reasons stated below, the Court concludes that the Mortgage does not encumber Mrs. Payne's undivided one-half interest in the Property. Accordingly, summary judgment on Count One (to the extent that Count One seeks a judgment that the Mortgage does not encumber Mrs. Payne's one-half interest in the Property) must be granted in favor of the Trustee and against Huntington.

## II. Findings of Fact

The facts pertinent to the disposition of this matter are not disputed and can be summarized as follows. Prior to the Petition Date, the Paynes acquired title to the Property by a general warranty deed. Several years after the acquisition, in connection with a loan obtained from Huntington, both of the Paynes (again prior to the Petition Date) signed the Mortgage.[3] It is undisputed that the Mortgage was delivered to, and accepted by or on behalf of, Huntington and that the Mortgage was properly recorded with the Office of the Perry County Recorder on February 8, 2005 (over four years prior to the Petition Date).

Several provisions of the Mortgage are pertinent to the instant adversary proceeding. The Mortgage begins with a "Definitions" section. The prelude to this section states in part that "[w]ords used in multiple sections of this document are defined below. . . ." Mortg. at 1. One word that appears in multiple sections of the Mortgage—and the primary word relevant to the outcome of this adversary proceeding—is "Borrower." Its definition is as follows:

**(B) "Borrower"** is

**TODD S PAYNE, MARRIED**

Borrower is the mortgagor under this Security Instrument.[4]

---

**2.** The Trustee requests this relief as part of Count One of the Complaint. In the alternative, the Trustee also seeks to avoid the Mortgage on Mrs. Payne's interest under § 544(a)(3) (Count Two) and § 544(a)(1) (Count Three) and to preserve the Mortgage, to the extent it is avoided, for the benefit of the Mrs. Payne's bankruptcy estate under § 551 (Count Four). For the reasons explained below, the Court concludes that Count Two, Count Three and Count Four are moot. In addition, the Trustee also seeks in Count Five (as well as part of Count One) to sell the Property under § 363(f) free and clear of Huntington's interest. The Court will by

separate notice set a status hearing on the Trustee's request to sell the Property.

**3.** A copy of the Mortgage is attached as Exhibit B to the Trustee's Complaint. The form of mortgage is a standard Ohio–Single Family–Fannie Mae/Freddie Mac Uniform Instrument with MERS Form 3036 (rev. 01/01).

**4.** The Mortgage states that "**(A) 'Security Instrument'** means this document, which is dated January 24, 2005, together with all Riders to this document." Mortg. at 1. Thus, in this opinion, the terms "Security Instrument" and "Mortgage" are synonymous. Furthermore,

Mortg. at 1. Thus, the first page of the Mortgage defines Borrower to include only Mr. Payne and further states that, as the Borrower, he is the mortgagor under the Security Instrument. The Definitions section also defines "Note"—a term used in a later relevant section of the Mortgage (Section 13)—to mean "the promissory note signed by Borrower and dated January 24, 2005[.]" [5]

The provision of the Mortgage designed to effectuate a transfer of an interest in the Property—the granting clause—appears immediately after the Definitions in a section entitled "Transfer of Rights in the Property." In pertinent part, that section provides as follows:

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan [6], and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. *For this purpose, Borrower does hereby mortgage, grant and convey* to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successor and assigns of MERS the following described property located in the

COUNTY of PERRY:
Parcel ID Number:
6321 CIMARRON ROAD
MOUNT PERRY
("Property Address"):

which currently has the address of
[Street]
[City], Ohio 43760 [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

. . . .

*BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property* and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

the Mortgage indicates that no Riders were to be executed by the Borrower, *see* Mortg. at 2, and the parties have not suggested that the Paynes executed any Riders.

5. In its brief in opposition to the Motion, Huntington asserted that the Note is not properly in evidence. In his reply, the Trustee attached the Note to an authenticating affidavit. That was the last filing made in this matter, so it is unclear whether the Trustee's filing of the affidavit would persuade Huntington to no longer assert that the Note is not properly in evidence. The Court, though, need not address whether the Note is properly in evidence or whether Mrs. Payne did or did not actually sign the Note. As the definition

of Borrower set forth above demonstrates, and as explained further below, whether Mrs. Payne is a Borrower under the Mortgage's definition of that term—and thus a grantor under the Mortgage—does not depend on whether she signed the Note. Furthermore, in light of its conclusion that Mrs. Payne did not grant a mortgage on her interest in the Property, the Court also need not address the Trustee's contention that Mrs. Payne did not in fact sign the Note and need not analyze his argument that any mortgage she granted is therefore invalid for lack of consideration.

6. "Lender" means The Huntington National Bank and the "Loan" means "the debt evidenced by the Note[.]" Mortg. at 1–2.

. . . .

Mortg. at 3 (emphasis added). In short, only the "Borrower" granted a mortgage on the Property pursuant to the section of the Mortgage in which the granting clause appears.

Approximately ten pages of covenants follow the granting clause. Huntington contends that Mrs. Payne granted a mortgage on her interest in the Property in Paragraph 13, entitled "Joint and Several Liability; Co-signers; Successors and Assigns Bound." This covenant—which the Court will refer to as the "Co-signers Provision" or "Paragraph 13"—provides as follows:

> Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.[7] However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Mortg. at 10.

----

**7.** Paragraph 16 of the Mortgage provides that "words in the singular shall mean and include the plural and vice versa[.]" Mortg. at 11. Joint-and-several liability as provided for in Paragraph 13 would apply in those instances where there is more than one Borrower. The Mortgage, however, defines Borrower to include only one individual, Mr. Payne.

**8.** Rule 56, in its current form, became effective on December 1, 2010, after this adversary proceeding was commenced. "Amendments

Immediately after the conclusion of the covenants the Mortgage provides that "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it." Mortg. at 14. Immediately below this statement there is a signature line over the preprinted name Todd S Payne and the preprinted word Borrower. Mr. Payne placed his signature on that line. Below his signature are four signature lines with the preprinted word Borrower but no preprinted names. Mrs. Payne handwrote her name on the first of the additional lines under which the word Borrower appears and then placed her signature on the line above her handwritten name. On the next page appears the certificate of acknowledgment (with which the Trustee has raised no issue); after the certificate of acknowledgment there are two pages of legal description. Both of the Paynes initialed the Mortgage on each of its pages (other than the signature page and the legal description).

### III. Conclusions of Law

### A. Standard of Review for Motions for Summary Judgment

■ Rule 56 of the Federal Rules of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[8] The party

----

to the Federal Rules of Civil Procedure govern proceedings after the date they are effective in an action then pending unless the Supreme Court specifies otherwise or the court determines that applying them in a particular action would be infeasible or work an injustice." *Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312, 1317 n. 4 (11th Cir.2010). The summary judgment standard now appears in Rule 56(a) rather than, as it formerly did, Rule 56(c); however, the standard did not materially change. *See* Fed.R.Civ.P. 56(a)

seeking summary judgment bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the movant satisfies this burden, the nonmoving party must then assert that a fact is genuinely disputed and must support the assertion by citing to particular parts of the record. *See* Fed.R.Civ.P. 56(c)(1). The mere allegation of a factual dispute is not sufficient to defeat a motion for summary judgment; to prevail, the non-moving party must show that there exists some genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When deciding a motion for summary judgment, all justifiable inferences must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

The Sixth Circuit Court of Appeals has articulated the following standard to apply when evaluating a motion for summary judgment:

> [T]he moving [party] may discharge its burden by "pointing out to the ... court ... that there is an absence of evidence to support the nonmoving party's case." The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Hall v. Tollett,* 128 F.3d 418, 422 (6th Cir.1997) (citations omitted). A material fact is one whose resolution will affect the determination of the underlying action. *See Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.,* 88 F.3d 1466, 1472 (6th Cir.1996). An issue is genuine if a rational trier of fact could find in favor of either party on the issue. *See Schaffer v. A.O. Smith Harvestore Prods., Inc.,* 74 F.3d 722, 727 (6th Cir.1996). "The substantive law determines which facts are 'material' for summary judgment purposes." *Hanover Ins. Co. v. Am. Eng'g Co.,* 33 F.3d 727, 730 (6th Cir.1994). In determining whether each party has met its burden, the court must keep in mind that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548.

## B. Legal Principles Applicable to Issues Not Addressed by the Bankruptcy Code

 When the Bankruptcy Code does not address the extent of an interest in property, applicable state law provides the outcome-determinative legal principles. *See Kildow v. EMC Mortg. Corp. (In re*

---

advisory committee's note (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c)...."). Inasmuch as the amended rule does not change the standard for entry of summary judgment, application of

"the amended version of Rule 56 in this case is just and practicable and would not work a manifest injustice...." *Farmers Ins. Exch. v. RNK, Inc.,* 632 F.3d 777, 782 n. 4 (1st Cir. Jan.21, 2011).

*Kildow),* 232 B.R. 686, 693 (Bankr. S.D.Ohio 1999) ("When analyzing the validity, priority, or extent of interests in property, state law controls." (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979))). Because the Bankruptcy Code does not address the extent of a mortgagee's interest in property, applicable state law—here, the law of Ohio—will determine how the Court must rule. Furthermore, the Court must apply "state law in accordance with the controlling decisions of the state supreme court." *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys., Inc.,* 249 F.3d 450, 454 (6th Cir.2001). *See also Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) ("[S]tate courts are the ultimate expositors of state law, and ... we are bound by their constructions except in extreme circumstances not present here." (citations omitted)). The Ohio Supreme Court has not yet ruled on the effect of the Co–Signer Provision or whether an individual who is not identified in the body of a mortgage, but who signs and initials the mortgage, is a mortgagor of his or her interest. Thus, this Court's role is to "ascertain how [the Ohio Supreme Court] would rule if it were faced with the issue." *Meridian Mut. Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir.1999). In making this prediction, the Court must decide the issue the way that it believes the Ohio Supreme Court would do so. *See Hazlett v. Chase Home Fin., LLC (In re Nowak),* 414 B.R. 269, 276 (Bankr. S.D.Ohio 2009). To that end, the Court may consult "doctrinal trends embraced by [Ohio's] appellate courts" as well as "decisions from other jurisdictions...." *Rousey v. United States,* 115 F.3d 394, 397 (6th Cir.1997) (internal quotation marks omitted).

**C. Ohio Law Governing the Interpretation of Mortgages**

 Under Ohio law, mortgages are subject to "the same rules of interpretation and the same framework of analysis which apply to contracts generally." *Ogan v. Ogan,* 122 Ohio App.3d 580, 702 N.E.2d 472, 474 (1997). In interpreting the Mortgage, therefore, the Court will apply the legal principles governing the interpretation of contracts in Ohio. As articulated by the Ohio Supreme Court, those principles are as follows:

> When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. We examine the ... contract as a whole and presume that the intent of the parties is reflected in the language used in the [contract]. We look to the plain and ordinary meaning of the language used ... unless another meaning is clearly apparent from the contents of the [contract]. *When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.* As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.

*Cincinnati Ins. Co. v. CPS Holdings, Inc.,* 115 Ohio St.3d 306, 875 N.E.2d 31, 33 (2007) (citations and internal quotations marks omitted) (emphasis added). The interpretation of an unambiguous contract "is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.,* 15 Ohio St.3d 321, 474 N.E.2d 271, 272 (1984). "A contract does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto." *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.,* 78 Ohio St.3d 353, 678 N.E.2d 519, 526 (1997) (internal quotation marks omitted). Moreover, "[i]t is not the responsibility or function" of the Court to rewrite the terms of an unambiguous contract in "order to pro-

vide for a more equitable result." *Foster Wheeler Enviresponse,* 678 N.E.2d at 526.

### D. Mrs. Payne Did Not Grant a Mortgage on Her Interest in the Property.

■ As the factual recitation set forth in Section II above demonstrates, and as further explained below, the Mortgage unambiguously provides that the only Borrower is Mr. Payne and that as Borrower only he granted a mortgage on his interest in the Property. Huntington does not contend that it could have received a mortgage on the entire Property from Mr. Payne alone, and of course it could not have done so. *See Taylor v. Foster's Adm'r,* 22 Ohio St. 255, 266 (1871) ("The mortgagee can claim no greater estate than that of the mortgagor."). Rather, in an attempt to override the unambiguous meaning of the Mortgage's definition of Borrower and its granting clause, Huntington interposes a single argument—that the Co–Signer Provision of Paragraph 13 makes Mrs. Payne a mortgagor of her interest in the Property.

As explained below, this argument is without merit. The Mortgage unambiguously provides that the "Borrower"—Mr. Payne—is the mortgagor, *see* Mortg. at 1 (defining Borrower), and that only Mr. Payne as the Borrower "does hereby mortgage, grant and convey" the Property. Mortg. at 3. In turn, the provision on which Huntington relies, the Co–Signer Provision of Paragraph 13, defines a cosigner as *"any Borrower* who co-signs this Security Instrument but does not execute the Note[.]" Mortg. at 10 (emphasis added).

At first blush, the use of the defined term Borrower to describe a mortgagor might appear to be somewhat imprecise. After all, in common usage a borrower means "[a] person or entity to whom money or something else is lent." *Black's Law Dictionary* (9th ed. 2009). In the mortgage-loan context, the person to whom money is lent typically is the person who signs the promissory note. Yet the Mortgage contemplates that there might be a Borrower—denominated a "co-signer"— who "does not execute the Note" and who therefore "is not personally obligated to pay the sums secured by [the Mortgage.]" Mortg. at 10. The Mortgage might more accurately have used the defined term Mortgagor or Grantor instead of Borrower. Likewise, the term co-signer is not used in its usual sense in the Mortgage. Cosigner means "cosignatory," which in turn means "a joint signer." Merriam–Webster Online Dictionary, available at http://www.merriam-webster.com/ dictionary. There is no dispute that Mrs. Payne is a joint signer with Mr. Payne of the Mortgage. In common parlance, therefore, she is a co-signer of the Mortgage. She is not a co-signer within the meaning of the Mortgage, however, because the Mortgage unambiguously makes a person's status as a Borrower a prerequisite to being a co-signer. *See* Mortg. at 10 (defining co-signer as "any Borrower who co-signs this Security Instrument but does not execute the Note"). As discussed above, Mrs. Payne is not a Borrower as that term is defined in the Mortgage.

■ The parties are free to select a defined term and to ascribe to it the meaning they choose; once they do so, the meaning of the defined term overrides the definition established by the dictionary or other common usage. *See John Hancock Life Ins. Co. v. Abbott Labs.,* 478 F.3d 1, 7–8 (1st Cir.2006) ("Where the parties to a contract take pains to define a key term specially, their dealings under the contract are governed by that definition.... [P]arties to a contract may serve as their own lexicographers and may assign a particular meaning to any word they choose." (citations and internal quotation marks omitted)). Furthermore, "[i]t is generally accepted as a matter of

contract interpretation that where a term is defined in a contract, the term will be accorded that meaning wherever it appears." *Bank of Illinois v. Covey (In re Shara Manning Props., Inc.)*, —— B.R. ——, —— (Bankr.C.D.Ill.2010). *Cf. United States v. Canan*, 48 F.3d 954, 960 (6th Cir.1995) ("It would make little sense for the same defined term to have disparate meanings throughout the various subdivisions of the hearsay rules.").

In light of the foregoing, the Court concludes that the only Borrower—and thus the only mortgagor under the Mortgage—is Mr. Payne. Given that Mrs. Payne is not a Borrower, there is no basis in the Mortgage to conclude that she is a co-signer who signed the Mortgage to "grant and convey the co-signer's interest in the Property under the terms of this Security Instrument[.]" Mortg. at 10. To the contrary, she did not do so. Quite simply, the Co–Signer Provision of Paragraph 13 is unavailing for Huntington.

■ A close analysis of the signature page on the Mortgage demonstrates that Mrs. Payne's having signed the Mortgage does not change the result reached above. The signature page states that "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this [Mortgage.]" Mortg. at 14. Because Mr. Payne is the only Borrower under the Mortgage's definition of that term, this sentence may accurately be recast as follows: "BY SIGNING BELOW, [Mr. Payne] accepts and agrees to the terms and covenants contained in this

[Mortgage.]" The statement, therefore, was effective with respect to Mr. Payne. By contrast, the statement simply does not apply to Mrs. Payne, who is not a Borrower within the definition the parties used in the Mortgage. Even if Mrs. Payne's signature meant that she was agreeing to the terms and covenants contained in the Mortgage, those terms and covenants do not provide for a transfer by her of a mortgage on the Property. In short, Mrs. Payne signing the Mortgage above, and printing her name beside, the preprinted word Borrower does not change the definition of Borrower set forth in the Mortgage and does not make her a Borrower or a mortgagor of her interest in the Property.

■ As noted above, the Court must decide an issue governed by Ohio law in a manner that is consistent with the way the Ohio Supreme Court would decide the issue. "[I]f a state's highest court has not already ruled on the issue in the context of a mortgage, it is likely to consider if any analogous precedent exists in the context of a deed." *Kindt v. ABN AMRO Mortg. Grp. (In re Wallace)*, 2007 WL 6510864, at *1 (Bankr.S.D.Ohio Nov.15 2007). Importantly, therefore, the Court's analysis finds support in decisions that the Ohio Supreme Court has issued in the context of conveyance by deed. In *Smith v. Turpin*, 20 Ohio St. 478 (1870), the Ohio Supreme Court held that a purported grantor's intention to grant a mortgage on her property "was defeated by an omission to insert her name in the *granting clause* of the deed." *Smith*, 20 Ohio St. at 492.[9] *See*

---

9. In *Smith*, the Ohio Supreme Court ultimately reformed the mortgage so that the person not named as a grantor became one. *See Smith*, 20 Ohio St. at 493. Likewise, at least one Ohio court recently has reformed the granting clause of a mortgage to include as a mortgagor an individual who was not a mortgagor within the language originally used in the mortgage. *See Parkview Fed. Sav. Bank v. Grimm*, 2010 WL 4018700, at *5 (Ohio Ct.

App. Oct. 14, 2010), *appeal denied*, 127 Ohio St.3d 1549, 941 N.E.2d 804 (2011). *See also Horst v. Dague*, 34 Ohio St. 371, 376 (1878) ("[N]o prejudice resulting to intervening rights of third persons, if the mortgage failed to express the intention of the parties with sufficient clearness to enable the court to carry the same into effect, equity would reform it, although the mistake consisted in misap-

*also Foster's Lessee v. Dennison,* 9 Ohio 121, 125 (1839) (holding that no ownership interest of certain persons in property was conveyed where those persons were named and their signatures appeared at the end of the deed but the deed did not mention them in the granting clause or in the covenants). Thus, although the Ohio Supreme Court has not directly addressed the issues presented in this adversary proceeding, the Court's holding is consistent with the most relevant decisions of the Ohio Supreme Court.

The Court's analysis also finds support in decisions issued by several other federal and state courts. *See Sullivan v. Mortg. Elec. Registration Sys., Inc. (In re Wirth),* 355 B.R. 60, 63–64 (N.D.Ill.2005) ("[T]here is no indication that Wirth, whose name appears nowhere in the body of the mortgage, is a party to that agreement. To the contrary, [w]here a third party merely annexes his name to a contract in the body of which he is not mentioned, and which is a complete contract between other parties signing it and mentioned in it, such third person does not thereby become a party to the efficient and operative parts of the contract....") (citation omitted);[10] *Gilchrist v. United Bank & Trust Co. (In re Gilchrist),* 444 B.R. 343, 347 (Bankr. E.D.Ky.2010).[11] Among other pertinent decisions are the particularly on-point decisions in *Gilchrist and Padgitt,* 2008 WL 4191517, at *2, 2008 Bankr.LEXIS 3063, at *5–6:

> Pursuant to [*Padgitt*], Bank of America's mortgage is not valid as to John Gilchrist. The facts of *Padgitt* mirror those asserted herein. In both cases,

prehending or misjudging its legal effect."). The doctrine of reformation, however, is of no avail to Huntington in the instant adversary proceeding for two reasons. First, Huntington has not requested reformation. Second, even if Huntington had requested reformation of the Mortgage, such reformation "cannot be invoked to abrogate the rights of an innocent intervening third party" such as the Trustee and the creditors whose interests he represents. *Stubbins v. Am. Gen. Fin. Servs., Inc. (In re Easter),* 367 B.R. 608, 615 (Bankr. S.D.Ohio 2007). *See also Horst,* 34 Ohio St. at 376 (reformation permitted only if there is "no prejudice resulting to intervening rights of third persons").

**10.** The district court also noted that Wirth's signature was not properly notarized, but the court's analysis appears to have depended primarily on the omission of the purported mortgagor's name from the body of the mortgage. *See Wirth,* 355 B.R. at 63–64.

**11.** *See also Menninger v. Mortg. Elec. Registration Sys. (In re Earl),* 2010 Bankr.LEXIS 1993, at *6–7 (Bankr.S.D.Ohio July 2, 2010) ("The mortgage instrument, as described above, does not satisfy the requirements of Ohio law for a valid mortgage, at least in respect to the interest of Judith Earl. Here, the borrower is defined in the singular, Edward Ray Earl. The mortgage document itself only refers to the borrower in the singular. That both husband and wife have signed at the end of the document cannot carry defendant's case, for apart from Judith Ann Earl's single signature, there is no predicate in the language of the mortgage itself in reference to debtor Judith Ann Earl."); *Nelson v. Am. Home Mortg. Acceptance (In re Sparks),* No. 07–1033, Doc. No. 33 (Bankr.S.D.Ohio Mar. 3, 2010); *Schlarman v. Chase Home Fin., LLC (In re Padgitt),* 2008 WL 4191517, at *2, 2008 Bankr.LEXIS 3063, at *5–6 (Bankr. E.D.Ky. Sept. 11, 2008); *Wallace,* 2007 WL 6510864, at *3; *Ethridge v. TierOne Bank,* 226 S.W.3d 127, 131 (Mo.2007) ("The deed of trust does not reference Mary Ethridge or otherwise indicate that another individual is also a borrower or grantor. This definition is not open to different constructions and cannot reasonably be construed to mean that Mary Ethridge also is a borrower under the deed of trust."); *Berrigan v. Fleming,* 70 Tenn. 271, 1879 WL 3728, at *2 (1879) ("The weight of authority undoubtedly is that an estate in land can not be conveyed except by an instrument which designates the grantor by name or otherwise, and purports to convey his property. Grantor must be a party to the efficient and operative parts of the instrument of conveyance.").

the mortgage defined the "Borrower" as one spouse but not the other. In *Padgitt* and in this matter, both the husband and wife executed and acknowledged the mortgage. The debtors in *Padgitt* initialed every page and the Gilchrists initialed all but three pages of the mortgage. Finally, in both situations the mortgage at issue included the language that provides " . . . any Borrower who co-signs this Security Instrument but does not execute the Note (a co-signor): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent."

In *Padgitt,* this Court held the creditor's lien does not encumber the interest of the debtor wife as there is nothing in the body of the mortgage that sufficiently identifies the debtor wife as a grantor of the mortgage and the mortgage is silent as to the reason for execution.

The same holding applies here as to John Gilchrist.

*Gilchrist,* 444 B.R. at 347. In sum, the Court's analysis is consistent with the weight of authority.

Huntington cites only a single contrary decision issued by a state court and one issued by a bankruptcy court.[12] In the state court decision cited by Huntington, the court relied on a provision substantially similar to the Co–Signer Provision of Paragraph 13. *See SFJV 2005, L.L.C. v. Ream,* 187 Ohio App.3d 715, 933 N.E.2d 819, 824–25 (2010) ("[It is asserted] that the mortgage is ambiguous because Paul Ream is not listed as a 'Borrower' on the first page of the security instrument. . . . The first page states that Donna Ream, the borrower, owes the lender a debt . . . followed by terms that provide that the 'borrower' mortgages the property. . . . Paul initialed each page of the mortgage and signed the signature page on a line labeled 'borrower.' Although Paul Ream is not listed as a borrower/mortgagor on the first page of the mortgage . . . the mortgage makes clear that a 'borrower' who signs the mortgage instrument but does not execute the note mortgages his interest in the property without assuming liability for repayment of the debt; Paul signed as a 'borrower.' "). As the quotation set forth above shows, the state court

---

**12.** According to Huntington, in *Rhiel v. Chase Home Fin., LLC (In re Colbert),* 434 B.R. 844 (Bankr.S.D.Ohio 2010) the bankruptcy court stated "that a 'borrowing paragraph' [such as the one in the Huntington] mortgage (paragraph 13), 'unambiguously provides that [the borrower] granted a mortgage on his entire interest in the Property[.]' " Huntington Br. at 5. The bankruptcy court in *Colbert* did not so state. Instead, as the court stated in *Colbert,* "[b]y the Mortgage, the 'Borrower'—the Colberts collectively—did " 'mortgage, grant and convey . . . [the Property].' " Mortgage at 3." *Colbert,* 434 B.R. at 849. In other words, unlike in the instant adversary proceeding, in *Colbert* the definition of Borrower included both debtors. Furthermore, the bankruptcy court's conclusion in *Colbert* that both debtors granted a mortgage on their property was based on the granting clause, which—as with the Mortgage in the instant adversary proceeding—appeared on page 3 of the mortgage. The bankruptcy court looked to the co-signing provision of paragraph 13 of the mortgage at issue in *Colbert* only to construe the extent of the liability of a Chapter 7 debtor who had not signed the associated promissory note, but who clearly was a "Borrower" and thus a mortgagor within the meaning of the mortgage. *See Colbert,* 434 B.R. at 849. In short, Huntington misconstrues *Colbert,* and its reliance on that decision is misplaced.

used the lower-case word "borrower" in lieu of the defined term Borrower, which apparently included only Donna Ream. If the mortgage at issue in *Ream* used the defined term Borrower in the granting clause and the co-signer provision, then the state court essentially ignored, without justification, the definition of Borrower set forth in the mortgage at issue. This Court cannot do so.

In the bankruptcy court decision cited by Huntington, the court relied in part on the fact that the party who was not referenced in the mortgage placed his signature on a line that appeared over his preprinted name. *See Helbling v. ABN AMRO Mortg. Group, Inc. (In re Zver)*, No. 08–1322, Doc. 45 (Bankr.N.D.Ohio Apr. 18, 2009). *Cf. Rouse v. Wells Fargo Bank, N.A. (In re Suhrheinrich)*, 2009 WL 3335027, at *2 (Bankr.W.D.Mo. Oct.14, 2009) ("[T]he Court finds it significant that Barbara Suhrheinrich's name was typed below the line where her signature appears, alongside the preprinted word 'Borrower.' The presence of these notations on the [deed of trust] [are] indication[s] that the [deed of trust] was drafted, and Barbara Suhrheinrich signed it, with the intention that she be a grantor ('Borrower') under the [deed of trust]."). The Court does not believe that Mrs. Payne would have been a Borrower within the meaning of the Mortgage even if her name had been preprinted under the line she signed. However, the fact that her name was not preprinted provides, if anything, further support for the view that it was not in the parties' contemplation at the time the Mortgage was signed that she would be a mortgagor.

Because it provides an extended analysis of a provision identical to Paragraph 13, a decision not cited by Huntington, *HHP–Brentwood, L.L.C. v. Aurora Loan Servs., LLC (In re Surti)*, 434 B.R. 515 (Bankr. M.D.Tenn.2010), bears discussion. In *Surti*, the bankruptcy court concluded that Tarun Surti, a person who did not fall within the mortgage's definition of Borrower, was a " 'Borrower' who co-signs the [mortgage] but does not execute the Note (a "Co-signer")" and was co-signing the mortgage to mortgage his interest. *Surti*, 434 B.R. at 520. This conclusion, however, essentially ignores the definitions of Borrower and co-signer set forth in the mortgage at issue in *Surti*. As explained above, the Court cannot ignore the meanings the parties ascribed to the terms used in the Mortgage. The Court also cannot accept the *Surti* court's conclusion that the term Borrower is "used in two different senses" in the mortgage at issue. *Surti*, 434 B.R. at 520. Quite simply, that conclusion is inconsistent with the generally-accepted principle of contract interpretation discussed above under which a defined term has the same meaning wherever it appears. Furthermore, the analysis set forth in *Surti* makes a Borrower out of someone who is not and therefore is inconsistent with the primary purpose of Paragraph 13, which is to make clear that a Borrower (as defined in the mortgage) who does not sign the associated promissory note is granting a mortgage on his or her interest, but is not incurring any personal liability to make the payments on the loan secured by the mortgage.[13] Rather than leading to an "impossibility," *Surti*, 434 B.R. at 520, this Court's reading of

---

13. In *Surti*, the bankruptcy court also noted that the legal description on the mortgage identified the mortgaged property "as 'the same property conveyed to Tarun N. Surti and wife, Lata T. Surti, by Deed[.]' " *Surti*, 434 B.R. at 517. According to the bankruptcy court, this language "reveals that Tarun Surti [the individual who was not included within the definition of Borrower] is not a stranger to the document but was married to the other 'Borrower' at the time the 'married person' took title to the Property." *Surti*, 434 B.R. at 526. Although the Court does not find the manner in which the ownership of the Property is described in the Mortgage to be outcome determinative, the Court notes that there is nothing in the legal description

Paragraph 13 makes it possible for the parties' obligations to be clear. Indeed, Mrs. Payne could have been included within the Mortgage's definition of Borrower; if she had been, and if she in fact did not sign the Note, then she would have been a cosigner within the meaning set forth in the Mortgage. For all of these reasons, the Court finds the analysis set forth in *Surti* to be unpersuasive.

## E. The Trustee's Alternative Requests for Relief

■■■ In Count Two the Trustee seeks avoidance of the Mortgage on Mrs. Payne's interest pursuant to § 544(a)(3), in Count Three avoidance of the Mortgage on her interest pursuant to § 544(a)(1) and in Count Four preservation of the Mortgage, to the extent that it is avoided, for the benefit of Mrs. Payne's bankruptcy estate pursuant to § 551. For the reasons stated above, the Court has concluded that the Mortgage does not encumber Mrs. Payne's interest in the Property. Moreover, one "cannot avoid a lien that does not exist[.]" *Luedtke v. Commerce Bank N.A. (In re Luedtke)*, 394 B.R. 893, 896 (Bankr.C.D.Ill. 2008). *See also Bostic v. Nat'l City Bank (In re DeRee)*, 403 B.R. 514, 524 (Bankr. S.D.Ohio 2009) ("[T]he Trustee is not required to avoid the liens held by NCB because as set forth above, the Court has found that NCB's mortgage liens do not encumber the Debtor's interest in the Property."), *aff'd*, No. 09–404 (S.D.Ohio Mar. 29, 2010). As a result, the alternative relief requested by the Trustee is moot. *Cf. Finstad v. Florida, Dep't of Bus. & Prof'l Regulation*, 295 Fed.Appx. 352, 353 (11th Cir.2008) ("A complaint becomes moot when it no longer presents a 'live' controversy or a ruling on the issues

would have no practical significance."). The Court, therefore, will dismiss the Trustee's alternative request for relief on the basis of mootness.

## IV. Conclusion

The Court finds that there is no genuine dispute at to any material fact bearing on the question of whether the Mortgage encumbers Mrs. Payne's undivided one-half interest in the Property. In addition, the Court concludes that the Mortgage does not encumber her interest. Accordingly, the Motion is **GRANTED** in favor of the Trustee and against Huntington on Count One of the Complaint to the extent that Count One seeks a judgment that the Mortgage does not encumber Mrs. Payne's undivided one-half interest in the Property.

Granting summary judgment in favor of the Trustee on Count One moots a ruling on his requests for relief under Count Two (avoidance of the Mortgage pursuant to § 544(a)(3)), Count Three (avoidance of the Mortgage pursuant to § 544(a)(1)) and Count Four (preservation of the Mortgage pursuant to § 551). Count Two, Count Three and Count Four, therefore, are **DISMISSED** on the basis of mootness. By separate notice, the Court will set a status hearing on the remaining portion of Count One and on Count Five of the Complaint, by which the Trustee seeks to sell the Property under § 363(f) free and clear of Huntington's interest. A separate final judgment will be entered in accordance with the foregoing.

**IT IS SO ORDERED.**

---

or in any part of the Mortgage stating that the Property is owned by Mrs. Payne. To the contrary, the Mortgage states that "BORROWER [Mr. Payne only] COVENANTS that

Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property[.]" Mortg. at 3.