[Cite as *Kirkwood v. Motorist Mut. Ins. Co.*, 2012-Ohio-3981.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI   COUNTY**

| | | |
|---|---|---|
| CAITLYN KIRKWOOD, et al. | : | |
| | : | Appellate Case No. 2011-CA-23 |
| Plaintiff-Appellants | : | |
| | : | Trial Court Case No. 11-CV-655 |
| v. | : | |
| | : | |
| MOTORIST MUTUAL INSURANCE | : | (Civil Appeal from |
| COMPANY, et al. | : |  Common Pleas Court) |
| | : | |
| Defendant-Appellees | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 31st day of August, 2012.

. . . . . . . . . . .

DWIGHT D. BRANNON, Atty. Reg. #0021657, and DOUGLAS D. BRANNON, Atty. Reg. #0076603, Brannon & Associates, 130 West Second Street, Suite 900, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellants

RAYMOND J. DECKER, JR., Atty. Reg. #0069208, 36 East 7th Street, Suite 2420, Cincinnati, Ohio 45202
      Attorney for Defendant-Appellee, The Netherlands Insurance Company

CHRISTOPHER W. CARRIGG, Atty. Reg. #0023947, Freund, Freeze & Arnold, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
      Attorney for Defendant-Appellee, Motorist Mutual Insurance Company

KEVIN C. CONNELL, FREUND, FREEZE & ARNOLD, One South Main Street, Suite 1800, Dayton, Ohio 45402
      Attorney for Defendant-Appellee, Stephen Overholser

. . . . . . . . . . . .

FAIN, J.

## I. Introduction

**{¶ 1}**    Plaintiffs-appellants Caitlyn, Brad, Candy, and Chelsea Kirkwood appeal from a summary judgment rendered in favor of defendant-appellee The Netherlands Insurance Company.   The Kirkwoods contend that a policy of insurance issued by Netherlands provides underinsured motorists' coverage for injuries Caitlyn Kirkwood sustained in an automobile accident.   We agree with the trial court that, as a matter of law, there is no coverage under the policy.   Accordingly, the judgment of the trial court is Affirmed.

## II. The Underlying Tort and the Course of Proceedings

**{¶ 2}**     In September 2009, Caitlyn Kirkwood sustained injuries as the result of a collision between her automobile and a car driven by defendant-appellee Steven Overholser. According to the complaint, the Kirkwoods incurred in excess of $250,000 in medical expenses.

**{¶ 3}**   \ At the time of the accident, Caitlyn was driving a 1991 Mercury Tracer automobile owned by her mother, Candy Kirkwood.   The Tracer was insured through defendant-appellee Motorist Mutual Insurance Company.   The uninsured/underinsured (UM/UIM) policy limits on the Motorist's policy were $250,000 per person and $500,000 per accident, and were identical to the liability policy limits of the alleged tortfeasor, Steven Overholser.

**{¶ 4}**    Netherlands had also issued policy of insurance No. BA 9786976, listing

Kirkwood Heating & Cooling, Inc., a family business of the Kirkwoods, as the named insured. The effective dates of the policy were from November 1, 2008 through November 1, 2009. This policy had UM/UIM limits of $1,000,000 for each accident.

**{¶ 5}** The Kirkwoods brought this action against Overholser, Motorist Mutual, Netherlands, and others. The complaint against Netherlands was for coverage under the underinsured motorist provisions in its policy issued to the Kirkwood family business.

**{¶ 6}** In due course, Netherlands moved for summary judgment, contending that, as a matter of law, there was no underinsured motorist coverage under the applicable provisions of its policy. The trial court agreed, rendered summary judgment for Netherlands, and declared, under Civ.R. 54(B), that there was no just cause for delay.

**{¶ 7}** From the summary judgment rendered against them on their claims against Netherlands, the Kirkwoods appeal. Their sole assignment of error is as follows: "THE TRIAL COURT ERRED IN RENDERING SUMMARY JUDGMENT IN FAVOR OF THE INSURANCE COMPANY AS TO UIM COVERAGE FOR A FAMILY MEMBER OF A NAMED INSURED."

**{¶ 8}** Because this is an appeal from a summary judgment, our standard of review is de novo. The judgment can only be affirmed if there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law.

### III.   Under the Basic Policy of Insurance, There Is No
### Underinsured Coverage for an Automobile, Like the One
### Caitlyn Was Driving, That Is Not Listed in the Declarations.

{¶ 9}  The policy issued to Kirkwood Heating & Cooling contains, as Item Two, a Schedule of Coverages and Covered Autos, which begins as follows: "Each of the coverages below will apply only to those 'autos' shown as covered 'autos.'  'Autos' are shown as covered 'autos' for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO section of the Business Auto Coverage Form next to the name of the coverage."  There follows a list of coverages.  Underinsured Motorists coverage, as well as Uninsured Motorists coverage, displays the symbol "7" for "Covered Autos."

{¶ 10}  On the first page of the Business Auto Form, the Description of Covered Auto Designation Symbols corresponding to the symbol "7" is as follows: "Only those 'autos' described in Item Three of the Declarations for which a premium charge is shown * * * ."  The car Caitlyn was driving, which was owned by her mother, Candy, was not listed or described in the Declarations.  Therefore, the basic policy of insurance did not provide underinsured motorist coverage for that car.

### IV.   There Is No Coverage for the Car Caitlyn Was Driving

### Under the "Drive Other Car Coverage – Broadened Coverage

### for Named Individuals" Endorsement to the Policy

{¶ 11}  The Kirkwoods argue that there is underinsured motorist coverage under the "Drive Other Car Coverage – Broadened Coverage for Named Individuals" endorsement to the Netherlands policy.   That endorsement provides, in pertinent part, as follows:

C.  Changes In Auto Medical Payments And Uninsured And Underinsured

Motorists Coverages[1]

The following is added to **Who Is An Insured:**

Any individual named in the Schedule and his or her "family members" are "insured" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:

Any "auto" owned by that individual or by any "family member."

**{¶ 12}** The above-quoted provision makes no grammatical sense without the addition of two commas so that it reads as follows:

C.  Changes In Auto Medical Payments And Uninsured And Underinsured Motorists Coverages

The following is added to **Who Is An Insured:**

Any individual named in the Schedule and his or her "family members" are "insured" while "occupying," or while a pedestrian when being struck by, any "auto" you don't own except:

Any "auto" owned by that individual or by any "family member."

**{¶ 13}** Without the addition of the commas to recognize a parallel grammatic construction, there would be no object for the gerund "occupying"; i.e., occupying what?  As so construed, the provision makes sense.  The evident purpose of the provision is to extend uninsured – underinsured coverage to a situation where an insured is injured in an accident that does not involve an owned auto.  If an accident involves an owned auto – either as the auto the injured insured was occupying, or the auto that hit the pedestrian insured – then

---

[1] Heading C is in boldface in the original.

coverage of that auto must be paid for by a specific premium, since that is a specific risk associated with an owned auto. If the policy holder wants coverage for that owned auto, it must pay for that coverage. But if the insured is injured in an accident involving only unowned autos, there is uninsured – underinsured motorist coverage. The policy holder is not expected to pay a vehicle-specific premium for the general risk associated with unowned autos. There is no way to calculate a vehicle-specific premium for an unidentified, unowned auto.

{¶ 14} Caitlyn, the injured insured, was occupying an auto owned by her mother, Candy. Candy Kirkwood is a "family member" as defined in paragraph E of the endorsement, because she is related to Brad Kirkwood, who is named in the schedule following paragraph E, by marriage. Therefore, Caitlyn was injured while occupying an auto that comes within the exception set forth as the final paragraph to paragraph C of the "Drive Other Car Coverage – Broadened Coverage for Named Individuals" endorsement.

{¶ 15} Furthermore, this endorsement provides at the outset: "With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement." As noted in Part III, above, the Coverage Form provides underinsured motorists coverage only with respect to automobiles listed in the declarations, for which a specific premium is charged, and the automobile Caitlyn was driving was not listed in the declarations. Paragraph C of this endorsement only adds to those who are insured, it does not purport to change the scope of the coverage provided.

**V. There Is No Coverage Under the "Ohio Uninsured and Underinsured**

**Motorists Coverage – Bodily Injury" Endorsement, Because that**

**Endorsement Only Modifies Insurance for a Covered Auto, and**

**the Automobile Caitlyn Was Driving Was Not a Covered Auto**

{¶ 16} The Kirkwoods next argue that Brad Kirkwood's out-of-pocket payments for his daughter's medical expenses are covered under the "Ohio Uninsured and Underinsured Motorists Coverage – Bodily Injury" endorsement to the policy. Netherlands argues that any coverage under this endorsement is still subject to the requirement that an automobile covered by the policy be involved in the injury-producing accident. We agree.

{¶ 17} As noted in Part III, above, the basic policy only covers automobiles listed in the declarations, for which a specific premium is charged, for underinsured motorists coverage. The "Ohio Uninsured and Underinsured Motorists Coverage – Bodily Injury" endorsement upon which the Kirkwoods rely begins: "For a covered 'auto' licensed or principally garaged in, or 'garage operations' conducted in Ohio, this endorsement modifies insurance provided under the following: BUSINESS AUTO COVERAGE FORM * * * ." Therefore, the modifications to coverage in this endorsement, upon which the Kirkwoods rely, only apply with respect to a covered auto.

{¶ 18} The automobile Caitlyn was occupying when she was injured was not a covered auto. Therefore, the modifications in this endorsement do not apply.

## VI.  Conclusion

{¶ 19} None of the provisions in the policy upon which the Kirkwoods rely provide underinsured motorists coverage for this accident, which occurred while Caitlyn Kirkwood

was driving an automobile owned by her mother that was not listed in the declarations, and for which a specific premium was not charged. Therefore, there is no genuine issue of material fact, and Netherlands is entitled to judgment as a matter of law.

{¶ 20} The trial court did not err in rendering summary judgment for Netherlands. The judgment of the trial court is Affirmed.


CANNON, J., concurring:

{¶ 21} I respectfully concur with the lead opinion and agree the trial court did not err in rendering summary judgment for the insurer.

{¶ 22} I write separately to address two matters: first, appellants' interpretation of the "Who Is An Insured" definition under the "Drive Other Car" broadened coverage endorsement; and second, an argument concerning coverage under the Uninsured/Underinsured motorists ("UM/UIM") provisions of the underlying policy that I believe should be developed further.

{¶ 23} This case presents an issue of insurance contract interpretation. Essentially, appellants are seeking one interpretation of the contract while appellee is seeking another. Looking to the contract itself, it is important to recognize that reviewing courts cannot create ambiguity when none exists. "Although ambiguous provisions in an insurance policy must be construed strictly against the insurer and liberally in favor of the insured, * * * it is equally well settled that a court cannot create ambiguity in a contract where there is none." *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, ¶ 16, citing *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus, and *Hacker v.*

*Dickman*, 75 Ohio St.3d 118, 119, 661 N.E.2d 1005 (1996). "Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Id.* When a contract is unambiguous, a reviewing court must simply apply the plain language as originally written. *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 18, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 652 N.E.2d 684 (1995). Essentially, the role of a reviewing court is "to give effect to the intent of the parties to that agreement." *Martin Marietta Magnesia Specialties, L.L.C., v. PUC of Ohio*, 129 Ohio St.3d 485, 2011-Ohio-4189, 954 N.E.2d 104, ¶ 22. Applying these principles to the contract in this case, I believe the subject provisions are unambiguous as written, and appellants' interpretation does not give effect to the intent of the parties.

{¶ 24} The lead opinion gives clarity to the definition of "Who Is An Insured" in the "Drive Other Car" endorsement by inserting commas into the definition. While I do not necessarily object to the inclusion of these commas, I do not believe they are essential to give the definition clarity. Even without any commas, the word "occupying" in the definition can only refer to *any* vehicle, except one owned by the individual or any family member. The interpretation offered by appellants is that the definition means Caitlyn was an "insured" because, although she was driving an auto owned by her mother, she was "*struck by* an auto she did not own and which was not owned by any family member." Even interpreting the language of the endorsement most favorably to appellants, this is simply not a realistic reading of the definition of "Who is an Insured."

{¶ 25} The parties also address the issue of coverage under the UM/UIM provisions

of the underlying policy. Appellants claim that inclusion of the "Drive Other Car" endorsement has an effect on this coverage due to the fact that Brad Kirkwood, Caitlyn's father, became a "Named Insured" in that endorsement, which included "BRAD KIRKWOOD and SPOUSE" as insureds under the "Schedule" portion of that endorsement.

{¶ 26}   The UM/UIM coverage of the underlying policy contains a definition of "Who Is An Insured" that is separate and distinct from the definition of "Who Is An Insured" under the "Drive Other Car" endorsement.   Appellants contend the following definition applies from this area of coverage:

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

a. The Named Insured and any "family members".   * * *

However, it indicates that if the Named Insured in the Declarations is an organization, the following definition applies:

2. A * * * corporation or any other form of organization,

then the following are "insureds":

a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto".   * * *   However, no coverage is provided for anyone occupying an "auto" which is not a covered auto for Uninsured Motorists and/or Underinsured Motorists Coverage under this coverage form.

{¶ 27}   The "Named Insured" in the Declarations of the underlying policy is Kirkwood Heating and Cooling, Inc.  Therefore, if the "Named Insured" was the corporation,

there would only be UM/UIM coverage if the injured party was in a covered auto. If we accept appellants' argument that Brad Kirkwood is a "Named Insured" because of his inclusion in the Schedule attached to the "Drive Other Car" endorsement, coverage would extend to every family member in *any* auto unless an exclusion applies.

{¶ 28}    The exclusion in paragraph C(5)(c) of the UM/UIM policy denies coverage to Caitlyn.    This provision excludes UM/UIM coverage to any family member while (1) occupying any vehicle owned by the "Named Insured" that is (2) insured for UM/UIM coverage on a primary basis under any other policy.    In their reply brief, appellants claim this exclusion is inapplicable because Candace Kirkwood, Caitlyn's mother, was not *the* named insured.    They further claim that there is nothing in the record to establish Motorist Mutual was the "primary" UM coverage, and also that the auto driven by Caitlyn had no UM coverage because no coverage was afforded to her as a result of this accident.    (This is due to the fact that the limit of the coverage was the same as the limit carried by the tortfeasor, and therefore, by definition, there was no coverage.)

{¶ 29}    The problem for Caitlyn is that if her father, Brad Kirkwood, is a "Named Insured," so is her mother, Candace Kirkwood.    As noted above, the parties listed in the Schedule attached to the "Drive Other Car" endorsement are "BRAD KIRKWOOD and SPOUSE."    Only one person fits the description of "spouse."    Therefore, if Brad Kirkwood is a "Named Insured" under this definition, so is his spouse.    Otherwise, the definition of "Who Is An Insured" would be under paragraph B(2).    Under that paragraph, where the "corporation" is the "Named Insured," the individual must be in a "covered auto," which is clearly not the case here.    In any event, if Brad Kirkwood is a "Named Insured" due to the

Schedule in the "Drive Other Car" endorsement as appellants contend, Candace Kirkwood is also a "Named Insured," and the first requirement of the exclusion is met.

{¶ 30} With regard to the second requirement of the exclusion, appellants' argument that the auto did not have UM/UIM coverage is illogical. It clearly was covered by a policy of UM/UIM protection; the policy's limit was simply not high enough to cover this loss. Appellants also claim that even if there was applicable UM/UIM coverage, nothing in the record suggests that this coverage was "primary." However, the Motorist Mutual Policy provision dealing with "Other Insurance" does not claim to be excess coverage for the covered auto. To the contrary, nothing in the record indicates that it is anything *but* the primary coverage.

{¶ 31} The result here is logical and should have been reasonably contemplated by the parties. When members of the same household own a variety of vehicles and insure them with different companies, it is illogical to suggest that those with minimal or no coverage should be afforded increased benefits from policies with greater coverage. In fact, under the interpretation appellants are seeking, they could own a variety of other vehicles and would not need to have Medical Payments or UM/UIM coverage on any of them. An interpretation finding coverage under the facts of the case is a result I would find not reasonably contemplated by either party at the time the policies of insurance were issued. As a result, I agree the trial court did not err in rendering summary judgment.

FROELICH, J., dissenting:

{¶ 32} I understand that "[w]hile 'there is little doubt that imagination can conjure

up hypothetical cases in which the meaning of these terms will be in nice question, because we are condemned to the use of words, we can never expect mathematical certainty from our language.' " *Hill v. Colorado*, 530 U.S. 703, 733, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000), as cited in *LaRocco v. Old Republic Ins. Co.*, S.D.W.Va. No. 5:08-CV-00205, 2009 WL 3169176, *10 (Sept. 28, 2009) (a case which agrees with the majority). And that ambiguity does not exist merely because there are good faith disagreements as to the interpretation of certain wording.

{¶ 33} Nonetheless, reading an insurance policy should not be an oracular exercise in rhetoric or grammar. If the insurance company only intended to insure certain people ("insureds") in certain vehicles ("covered vehicles"), with an exception if such insureds are injured by other insureds or covered vehicles, why not say that?

{¶ 34} Courts must do their best to interpret statutes and regulations, but contracts such as insurance policies must be written so a reasonable insured can understand them. I would find this policy was not so written and, being ambiguous, must be interpreted in favor of the insured.

. . . . . . . . . . . . .

(Hon. Timothy P. Cannon, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Dwight D. Brannon
Douglas D. Brannon
Raymond J. Decker, Jr.
Christopher W. Carrigg
Kevin C. Connell
Hon. Christopher Gee