**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Sutton Bank v. Progressive Polymers, L.L.C.*, **Slip Opinion No. 2020-Ohio-5101.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5101

SUTTON BANK, APPELLANT, *v.* PROGRESSIVE POLYMERS, L.L.C., ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Sutton Bank v. Progressive Polymers, L.L.C.*, Slip Opinion No. 2020-Ohio-5101.]**

*Cognovit promissory notes—Courts must give effect to the clear intent of the parties when interpreting cognovit notes—Judgment reversed.*

(No. 2019-1314—Submitted July 21, 2020—Decided November 3, 2020)

APPEAL from the Court of Appeals for Portage County,
Nos. 2018-P-0079 and 2019-P-0001, 2019-Ohio-3239.

_____

**STEWART, J.**

{¶ 1} This case concerns whether certain inconsistencies in a cognovit promissory note signed by the debtors prevent its enforcement. Because the contract, viewed as a whole, put the debtors on notice of the rights that they were relinquishing by signing the note, the court of appeals erred in holding that the note

was defective. We therefore reverse the judgment of the Eleventh District Court of Appeals and reinstate the trial court's cognovit judgment entered in favor of the creditor.

## I. Background

{¶ 2} On July 22, 2016, appellees, Progressive Polymers, L.L.C., and Darin A. Bay, borrowed $500,000 from appellant, Sutton Bank. To secure the loan, Bay signed a cognovit promissory note as a member of Progressive Polymers and in his own behalf. Pursuant to the note, Progressive Polymers and Bay promised to repay Sutton Bank the principal amount of the loan, with interest, in 72 monthly installments. The note included a confession-of-judgment clause that contained a warrant of attorney by which Progressive Polymers and Bay agreed that should they default on the note, an attorney could confess judgment against them.

{¶ 3} The note begins with a section of definitions: " 'I', 'me,' and 'my,' refer to each Borrower signing this Note," Progressive Polymers and Bay, and " 'You' and 'Your' refer to the Lender," Sutton Bank. The pronouns retain this usage through the 30 paragraphs of the note, including in the boxed confession-of-judgment clause between paragraphs 29 and 30. The only portion of the document that does not clearly retain the construction of "you" and "your" as defined and quoted above, is the R.C. 2323.13(D)-required warning. This warning, which recites the language in R.C. 2323.13(D), is located immediately following paragraph 30 and directly above Bay's two signatures. Bold and in capital letters, it states:

WARNING: BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT

2

FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.

{¶ 4} On September 13, 2018, Sutton Bank filed a complaint for a cognovit judgment against Progressive Polymers and Bay in the Portage County Court of Common Pleas alleging default. The complaint sought the remaining balance owed on the principal, plus late fees, accrued interest, pre- and postjudgment interest, court costs, and attorney fees. Pursuant to the warrants of attorney in the note, an attorney chosen by Sutton Bank filed an answer confessing judgment against Progressive Polymers and Bay and in Sutton Bank's favor. The trial court ruled in favor of Sutton Bank and issued the cognovit judgment.

{¶ 5} Progressive Polymers and Bay appealed from the trial court's judgment to the Eleventh District Court of Appeals and also filed a Civ.R. 60(B) motion for relief from judgment in the trial court. The Eleventh District remanded the matter to the trial court to rule on the motion.

{¶ 6} In their motion, Progressive Polymers and Bay argued that the promissory note was not a valid cognovit note and that therefore the trial court lacked jurisdiction to enter a cognovit judgment in favor of Sutton Bank. The cognovit note was invalid, they argued, because the statutory warning had to be read as being directed to Sutton Bank as the lender, and not to them as the borrowers, since the note specifically defines "you" and "your" as the lender, Sutton Bank. Bay and Progressive Polymers asserted that this interpretation of the warning language was the only legitimate one inasmuch as a cognovit note must be strictly construed against the party seeking its enforcement. Accordingly, Progressive Polymers and Bay maintained that the warning was defective because

it failed to put *them* on notice of the rights that they were waiving by signing the note.

{¶ 7} Sutton Bank countered that while the definition section identified "you" and "your" with the lender, those definitions do not apply in the warning. Instead, the bank argued that courts must give words in a promissory note their defined meaning unless some other meaning is apparent on the face of the document. Sutton Bank maintained that it is was clear from the overall context of the document and the language used in the warning that the word "you," as contained in the warning, referred to Progressive Polymers and Bay as the signers of the note, notwithstanding the relevant provisions of the definition section.

{¶ 8} The trial court denied the motion to vacate, and Progressive Polymers and Bay appealed from that judgment also. In a split decision, the Eleventh District reversed the judgment of the trial court, vacated the cognovit judgment in favor of Sutton Bank, and remanded the cause to the trial court for further proceedings on the bank's complaint. 2019-Ohio-3239, ¶ 19.

{¶ 9} The court of appeals began by acknowledging that because cognovit notes allow judgment to be entered against a party without notice or hearing, they are strictly construed against the party seeking enforcement. The majority further reasoned that the parties' intent is revealed in their language. Unambiguous and clear terms need no interpretation, and courts must give effect to all contract provisions. After applying these rules, the court concluded:

> Interpreting the contract as a whole and avoiding interpretations that have the effect of annulling parts of it, the definition section of the Note unambiguously grants [Progressive Polymers and Bay] the right to confess judgment against Sutton Bank in the event of a breach. This is the language chosen by the parties to the contract—namely, Sutton Bank as the drafter of the

4

> Note—despite the default language inserted from the Ohio statute using the pronoun "you" instead of "I" to describe the signer(s). Sutton Bank acknowledges the borrower must be given the warning set forth in the statute. However, a plain reading of the definitions chosen by Sutton Bank establishes that there is no statutory warning directed to the borrower[s], [Progressive Polymers and Bay].

*Id*. at ¶ 15. Accordingly, the majority held that the note did not meet the strict requirements of R.C. 2323.13(D) and was therefore not a valid cognovit note upon which judgment could be entered.

{¶ 10} The dissent reached the opposite conclusion. It noted that Progressive Polymers and Bay's argument, while "creative," was unreasonable in light of the following facts: the note used the precise warning language required by R.C. 2323.13(D); the language clearly and naturally applied to Progressive Polymers and Bay and if read to apply to Sutton Bank, it would be meaningless and absurd; and the note, signed by Progressive Polymers and Bay, included a warrant of attorney, placing them at least constructively on notice that the warning provision applied to them and not Sutton Bank. *Id.* at ¶ 32-39 (Trapp, J., dissenting). The dissent admonished the majority for failing to apply the rule of contractual interpretation that defined terms within a contract should be interpreted as retaining their meaning throughout the contract unless evidence shows that the parties intended the term to have a different meaning. *Id*. at ¶ 22 (Trapp, J., dissenting). Finding that the overall context of the note, and the language employed by the warning provision itself, expressed a clear intent that "you" in the warning applied to Progressive Polymers and Bay, the dissent concluded that the note met the strict statutory requirements for cognovit notes and consequently that the cognovit judgment should be enforced. *Id.* at ¶ 39 (Trapp, J., dissenting).

**{¶ 11}** Sutton Bank appealed to this court, and we accepted jurisdiction over the following proposition of law: "Although cognovit clauses are construed strictly against those enforcing them, courts must still follow traditional rules of contractual interpretation when analyzing those clauses." *See* 157 Ohio St.3d 1510, 2019-Ohio-5193, 136 N.E.3d 495.

## II. Analysis

### A. Cognovit Promissory Notes

**{¶ 12}** A cognovit promissory note is a special type of commercial paper by which a debtor[1] authorizes a creditor, in the event of the debtor's default on his payment obligation, to obtain an immediate judgment against him without prior notice or an opportunity to be heard. *See D.H. Overmyer Co., Inc. v. Frick Co.*, 405 U.S. 174, 176, 92 S. Ct. 775, 31 L. Ed. 2d 124 (1972). A note takes the form of a cognovit note if it includes a warrant of attorney. *Huntington Natl. Bank v. Burda*, 10th Dist. Franklin No. 08AP-658, 2009-Ohio-1752, ¶ 8. The warrant of attorney authorizes an attorney of the creditor's choosing to act on behalf of the debtor to confess judgment against the debtor in a court of law. *See Overmyer* at 176, fn. 2; *Cleveland Bar Assn. v. Greenberg*, 112 Ohio St. 3d 138, 2006-Ohio-6519, 858 N.E.2d 400, ¶ 5, fn. 1. At bottom, "the purpose of a cognovit note is to allow the holder of the note to quickly obtain judgment, without the possibility of a trial." *Sky Bank v. Colley*, 10th Dist. No. 07AP-751, 2008-Ohio-1217, ¶ 7.

**{¶ 13}** R.C. 2323.12 and 2323.13 govern cognovit notes. For the warrant of attorney to be valid so that the court has authority to enter a cognovit judgment on the note, a specific warning must appear on it. R.C. 2323.13(D) states:

---

1. A debtor will also be referred to as a "maker." A "maker" is "[s]omeone who signs a promissory note." *Black's Law Dictionary* 1145 (11th Ed.2019).

A warrant of attorney to confess judgment contained in any promissory note, bond, security agreement, lease, contract, or other evidence of indebtedness executed on or after January 1, 1974, is invalid and the courts are without authority to render a judgment based upon such a warrant unless there appears on the instrument evidencing the indebtedness, directly above or below the space or spaces provided for the signatures of the makers, or other person authorizing the confession, in such type size or distinctive marking that it appears more clearly and conspicuously than anything else on the document:

"Warning — By signing this paper you give up your right to notice and court trial. If you do not pay on time a court judgment may be taken against you without your prior knowledge and the powers of a court can be used to collect from you regardless of any claims you may have against the creditor whether for returned goods, faulty goods, failure on his part to comply with the agreement, or any other cause."

{¶ 14} In the past, this court has stated that a warrant of attorney is to be strictly construed against the person in whose favor the judgment is given. *See Lathrem v. Foreman*, 168 Ohio St. 176, 188, 151 N.E.2d 905 (1958), citing *Haggard v. Shick*, 151 Ohio St. 535, 86 N. E.2d 785 (1949); *Peoples Banking Co. v. Brumfield Hay & Grain Co.*, 172 Ohio St. 545, 548, 179 N.E.2d 53 (1961); *Cushman v. Welsh*, 19 Ohio St. 536, 539 (1869); *Spence v. Emerine*, 46 Ohio St. 433, 439, 21 N. E. 866 (1889). We have also said that "court proceedings based on such warrants must conform in every essential detail with the statutory law governing the subject." *Lathrem* at paragraph one of the syllabus.

*B. Traditional Rules of Interpretation Apply to Cognovit Provisions*

{¶ 15} Rules of contract interpretation are tools that we use to give meaning to disputed terms or provisions so that the contract as a whole will reflect the parties' intent. *See Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. These rules can be broken down into two basic categories: primary interpretive rules and secondary interpretive rules. In all cases involving contract interpretation, we start with the primary interpretive rule that courts should give effect to the intentions of the parties as expressed in the language of their written agreement. *See Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37. Other primary interpretive rules assist the court in doing this by giving guidance on how to interpret the meaning of certain words. For example, one rule is that "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus. Another more specific, but also at times very helpful, rule is that technical terms are to be given their technical meaning "unless a different intention is clearly expressed." *See Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St. 3d 353, 361, 678 N.E.2d 519 (1997). Other rules are secondary, rather than primary, interpretive tools and do not operate unless the primary rules of interpretation fail to resolve the contract's meaning. The rule that a contract provision should be strictly construed against one party and liberally construed in favor of the other—either due to the type of contract or contractual provision at issue, inequality in bargaining power, or the fact that one party is the drafter and the other is not—is a secondary rule. *See Malcuit v. Equity Oil & Gas Funds, Inc.*, 81 Ohio App.3d 236, 239-240, 610 N.E.2d 1044 (9th Dist.1992). Accordingly, it does not come into play unless the intent of the parties cannot be

deciphered because the contract language is reasonably susceptible of two different interpretations. *See id.*

{¶ 16} We conclude that traditional rules of contract interpretation do apply to cognovit provisions, just as they would to any other provision in any other contract. Rules of interpretation have one purpose—to give meaning to the language of the contract in a way that reflects the intent of the parties. If courts did not use rules of interpretation when interpreting cognovit provisions, those provisions could be open to all manner of interpretations, some of which would naturally be incongruous with the parties' actual intent.

{¶ 17} The majority and dissenting opinions of the court of appeals did, to some extent, apply traditional rules of contract interpretation in their respective analyses. We agree with Sutton Bank, however, that the majority's analysis stopped short of where it should have when it applied the note's definition of "you" (referring to the lender, Sutton Bank) to the statutory warning language without considering, as it should have considered, whether the parties intended this reading.

*C. The Note's Definition Section Does Not Apply to the Statutory Warning*

{¶ 18} Because this case involves an issue of contract interpretation, the outcome depends on whether the parties intended the note's definition of "you" to apply to the statutory warning. *Sunoco*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, at ¶ 37 (A court's primary concern when confronted with an issue of contract interpretation is to give effect to the parties' intentions). Although words and terms within a contract will be given their ordinary meaning, *see Alexander* at paragraph two of the syllabus, where parties to a contract have given a word a specific meaning by expressly defining it in the contract, that definition will generally override whatever definition might otherwise be established by an examination of the word's ordinary meaning or common usage. *In re Payne*, 450 B.R. 711, 719 (Bankr.S.D.Ohio 2011). Furthermore, when a word is expressly defined, then that word should be given its expressed meaning whenever it is used

in the contract. *Id.* at 719-720. Both rules regarding defined terms stem from the broader principle that where terms in a contract are clear and unambiguous, they should be applied as written. It is clear from the appellate court's opinion that the court used these rules to conclude that the definition section of the note must apply to the warning provision. However, what the appellate court failed to understand is that these rules—helpful though they are—are not unbreakable or inviolable. They must yield to the intent of the parties, and when the parties clearly did not intend an express definition to apply, a court cannot force that construction upon them. *See In re Adelphia Communications Corp.*, 368 B.R. 348, 354 (Bankr.S.D.N.Y.2007) (defined terms must still be interpreted in the context of the entire agreement); *Beanstalk Group, Inc. v. AM Gen. Corp.,* 283 F.3d 856, 860 (7th Cir.2002) ("a contract will not be interpreted literally if doing so would produce absurd results in the sense of results that the parties, presumed to be rational persons pursuing rational ends, are very unlikely to have agreed to seek").

{¶ 19} Focusing on what the parties would have intended, we are unpersuaded by Progressive Polymers and Bay's argument that the note's defined terms had the effect of modifying the warning provision such that the warning no longer applied to them. To begin, the very first sentence of the warning says: "BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL." (Capitalization sic.) The "you" clearly refers to the signers of the note. And because Bay's signatures, on behalf of himself and Progressive Polymers, are the only ones on the note and appear directly below the warning, the "you" must necessarily refer to Progressive Polymers and Bay, regardless of how "you" is defined elsewhere in the document. If someone had signed the document on behalf of Sutton Bank, there would be ambiguity as to whether "you" referred to Sutton Bank as the lender instead of Progressive Polymers and Bay as the borrowers. But since Sutton Bank did not sign, no ambiguity exists. Likewise, the second sentence of the warning provision also makes clear that "you" refers to

Progressive Polymers and Bay.  It states: IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR * * *."  (Capitalization sic.)  Bay and Progressive Polymers do not dispute that they are the only parties to the note that have an obligation to make timely payments.  Sutton Bank, as the lender and creditor, has no such obligation.  Furthermore, according to the warning's plain language, "you" in the second sentence must at least be viewed as referring to a party that is not the creditor because that individual or entity might have claims against the creditor.  Again here, Sutton Bank is the creditor.   If we adopt the construction that Progressive Polymers and Bay urge us to adopt, this second sentence would be read to mean: "If [Sutton Bank] does not pay on time a court judgment may be taken against [Sutton Bank] without [Sutton Bank's] prior knowledge and the powers of the court may be used to collect from [Sutton Bank] regardless of any claims [Sutton Bank] may have against [itself] * * *.  This reading obviously makes no sense.

{¶ 20} Accordingly, we find that the statutorily-required language of the warning provision, coupled with the placement of the signature line, can leave no doubt that the notice was directed to the makers of the note: Progressive Polymers and Bay.  Indeed, it is telling that neither Bay nor Progressive Polymers argues, or has ever argued, ignorance as to the type of document that they were signing.  Nor have they claimed ignorance about waiving their due process rights by signing it. Instead, their arguments against upholding the cognovit judgment rest on the fact that technically, if the definition of "you" in the note is applied to the "you" in the warning provision, the warning provision put Sutton Bank, and not them, on notice of rights that Sutton Bank was waiving even though Progressive Polymers and Bay,

not Sutton Bank, were the signatories. This is an unnatural and strained reading of the warning provision, and the parties did not intend such a result.

### III. Conclusion

{¶ 21} For the foregoing reasons, we hold that although cognovit clauses are construed strictly against those seeking to enforce them, courts must still give effect to the clear intent of the parties when interpreting them. We therefore reverse the judgment of the Eleventh District Court of Appeals and reinstate the trial court's cognovit judgment in favor of Sutton Bank.

Judgment reversed.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, and DONNELLY, JJ., concur.

_____

Meyer Kerschner, Ltd., Michael D. Stultz, and Douglas A. Stephan, for appellant.

Buckingham, Doolittle & Burroughs, L.L.C., Patrick J. Keating, and Daniel J. Glass, for appellee.

Ice Miller, L.L.P., and Steven D. Forry, urging reversal for amicus curiae Ohio Credit Union League.

Vorys, Sater, Seymour and Pease, L.L.P., John J. Kulewicz, Jeffrey E. Smith, and Scott A. Herkamp; and Jeffrey D. Quayle, urging reversal for amicus curiae Ohio Bankers League.

Porter, Wright, Morris & Arthur, L.L.P., H. Grant Stephenson, and L. Bradfield Hughes, urging reversal for amicus curiae Community Bankers Association of Ohio.

_____