[Cite as *Fisher v. United Ohio Ins. Co.*, 2025-Ohio-812.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

DAVID FISHER, et al.,

        Plaintiffs-Appellants,

  - vs -

PETER URICK,

        Defendant,

UNITED OHIO INSURANCE COMPANY,

        Defendant-Appellee.

**CASE NO. 2024-T-0069**

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2023 CV 01306

---

## O P I N I O N

Decided: March 10, 2025
Judgment: Affirmed in part, reversed in part, and remanded

---

*Kathleen J. St. John, David M. Paris,* and *Brian W. Parker*, Nurenberg, Paris, Heller & McCarthy Co., LPA, 600 Superior Avenue, E., Suite 1200, Cleveland, OH 44114 (For Plaintiffs-Appellants)

*Matthew R. Planey*, Plunkett Cooney, 716 Mt. Airyshire Boulevard, Suite 150, Columbus, OH 42235 (For Defendant-Appellee).

JOHN J. EKLUND, J.

{¶1} Appellants, David Fisher ("Mr. Fisher") and Leona Fisher ("Mrs. Fisher") (collectively, "Appellants"), appeal the judgment of the Trumbull County Court of Common Pleas denying their motion for partial summary judgment and granting the cross-motion for summary judgment filed by Appellee, United Ohio Insurance Company ("United").

{¶2} Appellants were seriously injured when they were struck by a pickup truck driven by an underinsured motorist ("UIM"). Appellants had been riding nonmotorized

scooters and were standing by the side of the road. At issue is whether Appellants are entitled to UIM coverage and Auto Medical Payments Coverage under Mr. Fisher's commercial automobile insurance policy. Appellants raise two assignments of error, arguing that the trial court erred in denying their motion for partial summary judgment and in granting United's cross-motion for summary judgment.

{¶3} Having reviewed the record and the applicable law, we find Appellants' first assignment of error to be without merit. The Court recognizes that Appellants are living with the consequences of a tragic accident. However, the insurance policy's purpose and language govern the outcome of this appeal. Considering the policy as a whole, there is no genuine issue of material fact that Appellants are not entitled to UIM coverage. Mr. Fisher purchased UIM coverage as part of a commercial automobile policy for his business. The policy does not provide UIM coverage unless an "insured" was "occupying" a covered "auto" at the time of the accident.

{¶4} We find merit to Appellants' second assignment of error. The policy's endorsement for Auto Medical Payments Coverage expressly applies when an "insured" is struck by "any 'auto'" while a "pedestrian." Appellants raised a genuine issue of material fact as to whether they were "pedestrians" at the time of the accident.

{¶5} Therefore, we affirm the judgment of the Trumbull County Court of Common Pleas in part, reverse it in part, and remand for further proceedings.

**Substantive and Procedural History**

{¶6} Appellants are a married Amish couple who do not drive motor vehicles. Mr. Fisher operates a tree service and logging business and purchased a commercial automobile insurance policy from United. Relevant here, the policy includes UIM

2

Case No. 2024-T-0069

coverage of $1,000,000 "per person/each accident" and Auto Medical Payments Coverage of $5,000 for "each insured."

{¶7} On December 31, 2021, Appellants were riding nonmotorized "kick" scooters on Corey Hunt Road in Trumbull County to visit a relative. As they were standing by the side of the road, they were struck by a pickup truck driven by Pete Urick. Urick fled the scene. Following an investigation, law enforcement identified Urick as the driver and apprehended him. He was criminally prosecuted and sentenced to 48 months in prison. *See State v. Urick*, 2024-Ohio-2509 (11th Dist.).

{¶8} Appellants sustained serious injuries from the accident. Urick's insurer tendered liability policy limits of $100,000 per person. Appellants filed a claim under Mr. Fisher's United policy seeking UIM coverage and Auto Medical Payments Coverage. United denied coverage on the grounds that Appellants were not "occupying" a covered "auto" at the time of the accident.

{¶9} On August 31, 2023, Appellants filed a complaint against United in the Trumbull County Court of Common Pleas.[1] On September 19, 2023, United filed an answer and a counterclaim for declaratory judgment. On October 10, 2023, Appellants filed a reply to United's counterclaim.

{¶10} On March 11, 2024, Appellants filed a motion for partial summary judgment on their claim for UIM coverage and on United's counterclaim. On April 22, 2024, United filed a brief in opposition and a cross-motion for summary judgment on Appellants' complaint and on its counterclaim. Appellants opposed United's cross-motion.

---

1. Appellants also named Urick as a defendant. On February 12, 2024, Appellants voluntarily dismissed their claims against Urick with prejudice.

3

Case No. 2024-T-0069

{¶11} On August 13, 2024, the trial court filed a judgment entry denying partial summary judgment to Appellants and granting summary judgment to United. The trial court agreed with United's reading of the policy and found that Appellants were not entitled to UIM coverage or Auto Medical Payments coverage because they were not "occupying" a covered "auto" at the time of the accident.

{¶12} On September 11, 2024, Appellants timely appealed, raising two assignments of error.

**Standard of Review**

{¶13} We review a trial court's decision granting summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Civ.R. 56 provides that summary judgment may be granted when (1) no genuine issues as to any material fact remain to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

{¶14} The Supreme Court of Ohio has explained how courts must interpret insurance contracts, as follows:

> When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.

4

On the other hand, where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. A court, however, is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties.

It is generally the role of the finder of fact to resolve ambiguity. However, where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party. In the insurance context, the insurer customarily drafts the contract. Thus, an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured.

There are limitations to the preceding rule. "Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Morfoot v. Stake*[, 174 Ohio St. 506 (1963)] . . . , paragraph one of the syllabus.

(Citations omitted.) *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11-14.

## UIM Coverage

{¶15} Appellants' first assignment of error states: "The Trial Court Erred In Granting United Ohio's Motion For Summary Judgment And Denying The Fishers' Motion For Partial Summary Judgment On The Fishers' Claim For Underinsured Motorist (UIM) Benefits Under The United Ohio Policy."

{¶16} To determine whether Appellants are entitled to UIM coverage, we must examine the policy's provisions "in the context of the overall policy and with respect to the policy's purpose." *Sauer v. Crews*, 2014-Ohio-3655, ¶ 13. The Supreme Court of Ohio has held that "insurance policies cannot be read in an overly circumscribed fashion." *Id.* "'One may not regard only the right hand which giveth, if the left hand also taketh away. The intention of the parties must be derived instead from the instrument as a whole, and

5

Case No. 2024-T-0069

not from detached or isolated parts thereof.'" *Id.*, quoting *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 172 (1982).

{¶17} As stated, Mr. Fisher purchased a "Commercial Auto" insurance policy for his business. Three portions of the policy are most relevant to Appellants' first assignment of error: (1) the "Business Auto Declaration" (the "Declaration"); (2) the "Business Auto Coverage Form"; and (3) the endorsement for "Ohio Uninsured Motorists Coverage – Bodily Injury" (the "UIM Endorsement").

{¶18} The Declaration identifies Mr. Fisher as the Named Insured. It describes his "business" as "tree service and logging." The Declaration also provides in relevant part:

**ITEM TWO  SCHEDULE OF COVERAGES AND COVERED AUTO**
This policy provides only those coverages where a charge is shown in the premium column below. Each coverage will apply only to those "autos" shown as covered "autos", indicated by the entry of one or more symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

{¶19} The Declaration indicates that Mr. Fisher purchased coverage for "liability," "auto medical payments," "uninsured motorists," "underinsured motorists," "physical damage comprehensive," and "physical damage collision." Mr. Fisher's "liability" coverage references symbols 7, 8, and 9 in relation to his covered "autos." His other coverages, including his UIM coverage, reference symbol 7.

{¶20} The Business Auto Coverage Form provides in relevant part:

**SECTION I – COVERED AUTOS**
Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos." The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

6

Case No. 2024-T-0069

**{¶21}** The Business Auto Coverage Form describes "Symbol 7" in relevant part:

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown . . . . |

**{¶22}** Item Three of the Declaration, in turn, describes the following "autos": (1) 2008 GMC K2500 Sierra; (2) 2018 Golden Trailer; (3) 2007 Jeep Grand Cherokee; and (4) 2018 Appalachian Trailer.

**{¶23}** The UIM Endorsement begins, "**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**" (Emphasis in original.) The UIM Endorsement's introductory paragraph states in relevant part:

> For a covered "auto" licensed or principally garaged in . . . Ohio, this endorsement modifies insurance provided under the following:
> . . .
>
> BUSINESS AUTO COVERAGE FORM
> . . .
>
> With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**{¶24}** The UIM Endorsement's coverage provision states in relevant part:

> **A. Coverage**
> **1.** We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury" sustained by the "insured" and caused by an "accident."
>
> The owner's or operator's liability for these damages must result from the ownership, maintenance, or use of the "uninsured motor vehicle" or "underinsured motor vehicle."

**{¶25}** The UIM Endorsement defines "Who Is An Insured" in relevant part:

7

Case No. 2024-T-0069

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members."

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss", or destruction. However, no coverage is provided for anyone occupying an "auto" which is not a covered auto for Uninsured Motorists and/or Underinsured Motorists Coverage under this Coverage Form.

   . . .

2. A partnership, limited liability company, corporation, or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss", or destruction. However, no coverage is provided for anyone occupying an "auto" which is not a covered auto for Uninsured Motorists and/or Underinsured Motorists Coverage under this Coverage Form.

{¶26} The UIM Endorsement defines "family member" as "a person related to an individual Named Insured by blood, *marriage*, or adoption who is a resident of such Named Insured's household, including a ward or foster child." (Emphasis added.) It defines "occupying" as "in, upon, getting in, on, out, or off."

{¶27} The parties do not dispute that (1) Mr. Fisher is the Named Insured; (2) Mrs. Fisher is a "family member"; (3) Appellants sustained "bodily injury" caused by an "accident"; and (4) Urick was driving an "underinsured motor vehicle." Rather, the parties dispute whether an "insured" must have been "occupying" a covered "auto" at the time of the accident. As stated, Appellants had been riding nonmotorized "kick" scooters, and Urick struck them with his vehicle while they were standing by the side of the road. If the

8

policy requires an "insured" to be "occupying" a covered "auto" at the time of the accident, then Appellants are not entitled to UIM coverage.

{¶28} Appellants argue that the trial court erroneously relied on an inapplicable provision in determining they were not entitled to UIM coverage. We agree. The trial court quoted and purported to apply the definition of "Who Is An Insured" from a separate policy endorsement entitled, "Exclusion – Employees – Hired or Borrowed Autos," which modifies Mr. Fisher's "liability" coverage. However, the Business Auto Coverage Form defines "[i]nsured" as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage." UIM coverage is the applicable coverage in this case. Therefore, the UIM Endorsement's definition of "Who Is An Insured" is the relevant provision.

{¶29} Despite the trial court's error, its judgment is not automatically reversible. The Supreme Court of Ohio has held that "where the judgment is correct, a reviewing court is not authorized to reverse such judgment merely because erroneous reasons were assigned as the basis thereof." *Agricultural Ins. Co. v. Constantine*, 144 Ohio St. 275, 284 (1944). "[I]f the judgment being reviewed on appeal is right for any reason, it is the duty of the appellate court to affirm it." *Geneva v. Fende*, 2009-Ohio-6380, ¶ 33 (11th Dist.). "This so because reviewing courts affirm and reverse judgments, not the reasons for the judgments." *Id.* Therefore, as part of our de novo review, we must examine the UIM Endorsement's definition of "Who Is An Insured."

{¶30} Appellants argue that the definition of "Who Is An Insured" in Section B.1.a. of the UIM Endorsement, which is applicable to an "individual" like Mr. Fisher, does not require a covered "auto." They note that the alternative definitions in Section B.1.b., which

9

is applicable to "anyone else," and in Section B.2.a., which is applicable to an "organization," expressly require a covered "auto."

{¶31} Appellants are correct that the definition of "Who Is An Insured" in Section B.1.a. does not expressly reference a covered "auto." However, adopting Appellants' interpretation would require us to disregard the policy's purpose and its other express provisions. In particular, Mr. Fisher purchased a "Commercial Auto" policy for his business. The Declaration and the Business Auto Coverage Form expressly state that the policy's coverages, including UIM coverage, apply only to covered "autos." In addition, the UIM Endorsement expressly states that it modifies insurance provided under the Business Auto Coverage Form for a covered "auto." Considering the policy as a whole, Mr. Fisher purchased UIM coverage in relation to specifically-identified "autos" used in conjunction with his business. Therefore, the UIM Endorsement applies only to an accident involving a covered "auto."

{¶32} We also find that an "insured" must be "occupying" a covered "auto" at the time of the accident. As stated, Section B.1. provides that if the Named Insured is an individual like Mr. Fisher, then "insureds" include "a. The Named Insured and any 'family members'" and "b. Anyone *else* 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'" (Emphasis added.) The use of the term "else" in Section B.1.b. is critical. "Else" means "being different in identity," such as, "it must have been somebody *else*." (Emphasis in original.) *Merriam-Webster*, https://www.merriam-webster.com/dictionary/else (accessed March 3, 2025). It is a term of distinction that implies the preceding category ("The Named Insured and 'family members'" in Section B.1.a.) is separate from and does not include the subsequent category ("Anyone else

10

'occupying' a covered 'auto'" in Section B.1.b.). However, this distinction is specifically about *who* is covered, not about the *conditions* under which they are covered. Therefore, the proper reading of Section B.1. is that all "insureds"—whether the Named Insured, "family members," or "anyone else"—must be "occupying" a covered "auto" for UIM coverage to apply. In other words, the term "else" distinguishes between classes of "insureds" but does not exempt the Named Insured and "family members" from the "occupying" requirement.

{¶33} This interpretation is reinforced by the parallel provision in Section B.2.a. As stated, Section B.2.a. provides that if the Named Insured is "a partnership, limited liability company, corporation, or any other form of organization," then "insureds" include "Anyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'." In other words, the only persons who qualify as an "insured" under Section B.2.a. are those "occupying" a covered "auto." Thus, the provision does not extend coverage to partners, members, owners, officers, or employees of the organization unless they are "occupying" a covered "auto."

{¶34} When read together, Sections B.1. and B.2. reveal a coherent policy structure in which "occupying" a covered "auto" is the central, unifying condition for UIM coverage. The only difference between the provisions is that when the Named Insured is an individual, then the policy extends the definition of "insured" to include the Named Insured and "family members"—but still subject to the "occupying" requirement that applies throughout the policy.

{¶35} The language and structure of the UIM Endorsement, when properly construed, establish that an "insured" must be "occupying" a covered "auto" for UIM

11

Case No. 2024-T-0069

coverage to apply. This interpretation gives meaning to all parts of the policy, respects the parallel construction of its provisions, and reflects the clear intent to limit UIM coverage to those situations where an "insured" is "occupying" a "covered" auto. Since Appellants were not "occupying" a covered "auto" at the time of the accident, they are not entitled to UIM coverage.

{¶36} Our reading of the policy is consistent with decisions from appellate courts that have examined nearly identical language. For example, in *Kirkwood v. Motorist Mut. Ins. Co.*, 2012-Ohio-3981 (2d Dist.), Kirkwood's vehicle collided with a vehicle driven by an underinsured motorist. *Id.* at ¶ 2-3. The Kirkwood family business had an insurance policy that included UIM coverage. *Id.* at ¶ 4. However, the vehicle Kirkwood was occupying when she was injured was not a covered auto under the business policy. *Id.* at ¶ 10. The Kirkwood family sued for UIM coverage, and the trial court granted summary judgment to the insurance company. *Id.* at ¶ 5-6.

{¶37} On appeal, the Second District affirmed. *Id.* at ¶ 20. The lead opinion explained that the "basic policy," i.e., the "Business Auto Coverage Form," "only covers automobiles listed in the declarations, for which a specific premium was charged, for [UIM] coverage." *Id.* at ¶ 9, 17. In addition, the UIM Endorsement began with the statement, "For a covered 'auto' licensed or principally garaged in . . . Ohio, this endorsement modifies insurance provided under the . . . BUSINESS AUTO COVERAGE FORM." *Id.* at ¶ 17. The lead opinion concluded that "the modifications to coverage in this endorsement, . . . only apply with respect to a covered auto." *Id.* Since Kirkwood was not occupying a covered auto when she was injured, the UIM Endorsement did not apply. *Id.* at ¶ 18.

12

{¶38} Similarly, in *Infield v. Westfield Ins. Co.*, 2023-Ohio-1199 (5th Dist.), the Infields' vehicle collided with a vehicle driven by an underinsured motorist. *Id.* at ¶ 2-3. The Infields had purchased a commercial automobile policy that included UIM coverage. *Id.* at ¶ 5. However, the Infields' vehicle was not a covered auto under the commercial policy. *Id.* at ¶ 28-29. The Infields sued for UIM coverage, and the trial court granted summary judgment to the insurance company. *Id.* at ¶ 8, 14.

{¶39} On appeal, the Fifth District affirmed. *Id.* at ¶ 38. The court acknowledged that "the definition of 'Who Is An Insured' found within the UM/UIM Endorsement does not plainly state the named insured or family member must be occupying a covered auto." *Id.* at ¶ 34. However, the introductory language of the UM/UIM Endorsement stated, "For a covered 'auto' licensed or principally garaged in . . . Ohio, this endorsement modifies insurance provided under . . . BUSINESS AUTO COVERAGE FORM." *Id.* It further provided," With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement." *Id.* The court found that "[t]he plain language of the UM/UIM Endorsement states that it modifies insurance provided under the Business Auto Coverage Form for *covered autos.*" (Emphasis in original.) *Id.* The court explained that if it "were to consider the Infields' argument as to the definition of "Who Is An Insured,' [the court] could not give meaning to every provision of the UM/UIM Endorsement; thereby rendering meaningless the introductory limitation that the UM/UIM Endorsement only applies to covered autos." *Id.* at ¶ 35. Therefore, the court concluded that to be entitled to UM/UIM coverage, the insured must be occupying a covered auto at the time of the accident. *Id.* at ¶ 36.

13

Case No. 2024-T-0069

{¶40} Finally, in *Maher v. United Ohio Ins. Co.*, 2022-Ohio-1015 (4th Dist.), Maher was a passenger in an "Ecotec Rail Buggy/ATV" when the driver drove into a ditch. *Id.* at ¶ 1. Maher had purchased a commercial insurance auto policy with United that included UM/UIM coverage. *Id.* However, the only covered auto under the commercial policy was a 2006 Nissan Titan. *Id.* Maher sued for UIM coverage, and the trial court granted summary judgment to United. *Id.* at ¶ 8, 10.

{¶41} On appeal, the Fourth District affirmed. *Id.* at ¶ 43. The court found that "there is nothing in the UM/UIM endorsement that modifies coverage as outlined in the business auto form to now include any auto Maher occupies." *Id.* at ¶ 31. The court also "disagree[d] with Maher's interpretation that simply because the insured definition of 'anyone else' includes the words 'covered auto' is indicative of an inference to exclude it from the definition of 'The Named Insured.'" *Id.* at ¶ 33. The court stated that "[w]hen reviewing Maher's insurance policy as written, we cannot conclude that the UM/UIM endorsement grants Maher the highest level of coverage while paying a premium for a lower coverage. That, to us, is not a reasonable interpretation." *Id.* at ¶ 34. The court further found that its conclusion was "supported by the introductory language in the endorsement 'For a covered "auto."'" *Id.*

{¶42} Appellants, in support of their contrary interpretation, point to the following exclusion in the UIM Endorsement, which is often referred to as an "other owned vehicle" exclusion:

**C. Exclusions**
This insurance does not apply to:
. . .

**5.** "Bodily injury" sustained by:

14

**a.** An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage under this Coverage Form;

**b.** Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage under this Coverage Form . . . .

{¶43} Appellants acknowledge that this exclusion has no applicability to the circumstances of this case. However, they argue that the exclusion does not make sense if UIM coverage is already limited to persons "occupying" a covered "auto." In support, Appellants cite this Court's decision in *Westfield Ins. Co. v. Ellis*, 2004-Ohio-4393 (11th Dist.). In *Ellis*, the insured was injured by an underinsured motorist while driving her own vehicle, which was not a covered auto under her employer's automobile policy. *Id.* at ¶ 2-4. Ellis sued for UIM coverage. *Id.* at ¶ 4. The insurance company filed a complaint for declaratory judgment seeking a finding that the policy's "other owned vehicle" exclusion applied. *Id.* The trial court granted summary judgment to the insurance company. *Id.*

{¶44} On appeal, this Court reversed and remanded. *Id.* at ¶ 37. We held that the "other owned vehicle" exclusion in the policy was invalid and unenforceable because it failed to comport with the prior version of R.C. 3937.18, which is the statute governing UM and UIM coverage exclusions. *Id.* at ¶ 25. We also identified various ambiguities in the policy. *Id.* at ¶ 26. For instance, we found that the policy was ambiguous as to whether the insured and family members must be occupying a covered auto. *Id.* at ¶ 33. We reasoned that while the declaration page stated that each of the coverages applied only to covered autos, the UIM coverage portion did not expressly state that the insured

15

must be in a covered auto. *Id.* at ¶ 27. We rejected the insurance company's argument that the policy's invalid "other owned vehicle" exclusion logically suggested that Ellis was not covered under the UIM provision. *Id.* at ¶ 34. We stated that "[w]ere we to read the [UIM] portion of the policy to require the insured to be operating a covered auto, the exclusions set forth in the policy would be redundant: There would be no reason to exclude three specific situations addressing a non-covered auto because all situations involving non-covered autos are excluded." *Id.*

**{¶45}** We are not persuaded by Appellants' argument. The Supreme Court of Ohio has held that "'a court cannot create ambiguity in a contract where there is none.'" *AKC, Inc. v. United Specialty Ins. Co.*, 2021-Ohio-3540, ¶ 12, quoting *Lager v. Miller-Gonzalez*, 2008-Ohio-4838, ¶ 16. "This includes creating an ambiguity by asking whether the parties could have included different or more express language in their agreement." *Id.* "Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Lager* at ¶ 16.

**{¶46}** Similar to the insurance company's argument in *Ellis*, 2004-Ohio-4393 (11th Dist.), Appellants are improperly asking us to determine the meaning of the coverage provision based on an exclusion. In addition, while United could have used more explicit language in the coverage provision, its failure to do so does not create an ambiguity.

**{¶47}** In fact, the exclusion's express language confirms our reading of the policy. The exclusion applies when an "insured" sustains "bodily injury" while "'occupying' or when struck by any vehicle owned by that ['insured'] that is not a covered 'auto' for [UM] Coverage and/or [UIM] Coverage under this Coverage Form." In other words, the exclusion reiterates that UIM coverage originates from the applicable "Coverage Form,"

16

Case No. 2024-T-0069

which in this case is the Business Auto Coverage Form. The exclusion also reiterates that the Business Auto Coverage Form applies when an "insured" sustains "bodily injury" while "occupying" a covered "auto." Under Appellants' proposed reading, UIM coverage is excluded if an "insured" was "occupying" a non-covered "auto"; however, UIM coverage is required if an "insured" was not "occupying" any "auto."[2] It would be unreasonable to read a commercial *automobile* insurance policy in that manner. Rather, if United had intended to provide coverage regardless of whether an "insured" was "occupying" a covered "auto," United would have explicitly stated so (as it did in the endorsement for Auto Medical Payments Coverage discussed below).

**{¶48}** At most, one could argue that our reading of the exclusion makes it "redundant," as this Court stated in *Ellis*. *Id.* at ¶ 34. However, this Court in *Ellis* did not equate redundancy with *ambiguity*.

**{¶49}** Appellants next discuss various rules of contract construction in support of their interpretation. For instance, Appellants argue that there is a conflict between the UIM Endorsement and the Declaration that must be resolved in their favor, citing *American Hardware Mut. Ins. Co. v. Mansfield Auto Truck Plaza*, 15 Ohio St.3d 367 (1984); *Ellis*, 2004-Ohio-4393 (11th Dist.); *Batteiger v. Allstate Ins. Co.*, 2002 WL 242513 (2d Dist. Feb. 15, 2002); *Flynn v. Westfield Ins. Co.*, 2006-Ohio-3719 (1st Dist.), and *Marra v. Nationwide Ins. Co.*, 2007-Ohio-356 (7th Dist.). Appellants also argue that the

---

2. In the event Appellants were "occupying" their nonmotorized "kick" scooters at the time of the accident, the scooters are not "autos" under the policy. The Business Auto Coverage Form defines "auto" as "[a] land motor vehicle, 'trailer' or semitrailer designed for travel on public roads" or "[a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged." Ohio's financial responsibility law defines "vehicle," in relevant part, as "every device by which any person or property may be transported upon a highway, . . . *except devices* other than bicycles *moved by human power.*" (Emphasis added.) R.C. 4509.01(H).

Case No. 2024-T-0069

UIM Endorsement's introductory paragraph is "general," while the policy's coverage and definition provisions are "specific" and, thus, controlling, citing *Payton v. Peskins*, 2011-Ohio-3905, ¶ 14-15 (12th Dist.). Appellants further argue that a contrary interpretation of the policy would lead to absurd results, citing *Ellis* and *Batteiger*.

{¶50} The Supreme Court of Ohio has explained that "[r]ules of contract interpretation are tools that [courts] use to give meaning to disputed terms or provisions so that the contract as a whole will reflect the parties' intent." *Sutton Bank v. Progressive Polymers, L.L.C.*, 2020-Ohio-5101, ¶ 15. "These rules can be broken down into two basic categories: primary interpretive rules and secondary interpretive rules." *Id.* "In all cases involving contract interpretation, [courts] start with the primary interpretive rule that courts should give effect to the intentions of the parties as expressed in the language of their written agreement." *Id.* "Other primary interpretive rules assist the court in doing this by giving guidance on how to interpret the meaning of certain words." *Id.* "For example, one rule is that '[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.'" *Id.*, quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

{¶51} By contrast, "[o]ther rules are secondary . . . interpretive tools and do not operate unless the primary rules of interpretation fail to resolve the contract's meaning." *Id.* For instance, "[t]he rule that a contract provision should be strictly construed against one party and liberally construed in favor of the other—either due to the type of contract or contract provision at issue, inequality in bargaining power, or the fact that one party is the drafter and the other is not—is a secondary rule. Accordingly, it does not come into

18

play unless the intent of the parties cannot be deciphered because the contract language is reasonably susceptible of two different interpretations." *Id.*

**{¶52}** The rules that Appellants cite are "secondary interpretative tools." Since we are able to decipher the parties' intent from the express policy language, the rules are not applicable.

**{¶53}** Finally, Appellants argue that the Supreme Court of Ohio's decisions in *American Hardware*, 15 Ohio St.3d 367, and *Ohio Farmers Inc. Co. v. Wright*, 17 Ohio St.2d 73 (1969), and this Court's decision in *Ellis*, 2004-Ohio-4393 (11th Dist.), require us to construe the policy in their favor. We disagree.

**{¶54}** *American Hardware* involved conflicting policy language that created an ambiguity. Specifically, the printed references in the policy's declarations appeared to provide no coverage for personal property of another. *Id.* at 370. However, the typewritten numerical designations relating to endorsements provided such coverage. *Id.* There is no analogous conflict in the United policy. Therefore, *American Hardware* is factually distinguishable.

**{¶55}** In *Ohio Farmers*, a policy endorsement required the insurer to pay for bodily injury sustained by the insured in an accident caused by an uninsured motorist. *Id.* at 78. Crucially, "the endorsement contain[ed] no language purporting to limit the coverage to cases where the 'named insured' [wa]s using or occupying an 'insured automobile' at the time of his injury," nor did "the basic policy itself contain language, potentially referable to the endorsement, so limiting the coverage provided by the endorsement." Here, the covered "auto" requirement appears not only in the Declaration but also in the Business

Case No. 2024-T-0069

Auto Coverage Form and the UIM Endorsement's introductory paragraph. Therefore, *Ohio Farmers* is also factually distinguishable.

{¶56} While the policy in *Ellis*, 2004-Ohio-4393 (11th Dist.), appears to be similar to the United policy, it differs in material respects. In particular, Ellis was potentially covered by her employer's automobile policy by virtue of the Supreme Court of Ohio's widely criticized decision in *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660 (1999), where the Court found that the word "you" in an UIM endorsement was ambiguous because it referred to a corporation and held that the corporation's employee was an insured for purposes of UIM coverage. *Id.* at 664, 665.[3] Here, Mr. Fisher purchased a commercial automobile policy for his business. In addition, the covered "auto" requirement in Mr. Fisher's commercial policy appears in the Declaration, the Business Auto Coverage Form, and the UIM Endorsement's introductory paragraph. Therefore, *Ellis* is factually distinguishable. By contrast, the authorities cited above, namely *Kirkwood*, 2012-Ohio-3981 (2d Dist.), *Infield*, 2023-Ohio-1199 (5th Dist.), and *Maher*, 2022-Ohio-1015 (4th Dist.), involved more similar policies and facts. Therefore, they are more persuasive authority.

{¶57} It is also questionable whether *Ellis* remains good law in this district. Two years after *Ellis*, in *Yoder v. Progressive Corp.*, 2006-Ohio-5191 (11th Dist.), this Court stated that we were "persuaded" by the insurance company's argument, which included an assertion that the appellant was "not entitled to coverage as a matter of law" because "UM coverage may be invoked only where a party is operating a 'covered' vehicle as

_____

3. In *Galatis*, 2003-Ohio-5849, the Court substantially limited its holding in *Scott-Pontzer* to loss that occurs within the course and scope of employment. *Galatis* at paragraph two of the syllabus.

20

Case No. 2024-T-0069

defined in the Schedule of Covered Vehicles found in the declarations page." *Id.* at ¶ 15-16. We ultimately found that the policy's "other owned vehicle" exclusion precluded coverage without noting any potential redundancy. *Id.* at ¶ 22. Notably, the writing judge in *Ellis* dissented. *See Yoder* at ¶ 27-39 (Westcott Rice, J., dissenting).

**{¶58}** Yes, Appellants are living with the consequences of a tragic accident. However, the purpose and language of the United policy govern its meaning and, thus, the outcome of this appeal. We conclude there is no genuine issue of material fact that Appellants are not entitled to UIM coverage under the United policy. Accordingly, the trial court properly granted summary judgment to United and denied summary judgment to Appellants.

**{¶59}** Appellants' first assignment of error is without merit.

### Auto Medical Payments Coverage

**{¶60}** Appellants' second assignment of error states: "The Trial Court Erred In Granting United Ohio's Motion For Summary Judgment And Denying The Fishers' Motion For Partial Summary Judgment On The Fishers' Claim For Auto Medical Payments Benefits Under The United Ohio Policy."

**{¶61}** United asserts in its answer brief that this assignment of error is moot because it "has since tendered the limits of auto medical payments coverage under the applicable policy to Appellants." There is nothing in the record to substantiate United's assertion, and Appellants have not confirmed mootness. Therefore, this Court will consider the merits of Appellants' second assignment of error.

**{¶62}** We note that Appellants assign error in relation to the trial court's denial of their motion for summary judgment as well as the court's granting of United's cross-

Case No. 2024-T-0069

motion. A review of Appellants' motion indicates they did not actually request summary judgment on their claim for Auto Medical Payments Coverage. Rather, they referenced only their claim for UIM coverage. Therefore, we may only consider whether the trial court erred in granting United's cross-motion.

{¶63} The trial court found that Appellants were not entitled to UIM coverage or Auto Medical Payments Coverage for the same reason—they were not "occupying" a covered "auto" at the time of the accident. However, the trial court did not quote or separately analyze the endorsement for Auto Medical Payments Coverage. Appellants argue that this endorsement does not require an "insured" to be "occupying" a covered "auto."

{¶64} The endorsement for Auto Medical Payments Coverage begins, "**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**" (Emphasis in original.) The endorsement's introductory paragraph states in relevant part:

> This endorsement modifies insurance provided under the following:
> . . .
>
> BUSINESS AUTO COVERAGE FORM
> . . .
>
> With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

{¶65} The endorsement's coverage provision states in relevant part:

> **A. Coverage**
> We will pay all reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident." We will pay only those expenses incurred, for services, rendered within three years from the date of the "accident."
>
> We have the right to utilize outside sources, vendors, experts, consultants, and software tools of our choosing to review the medical expense invoices and medical treatment records to assist us in

22

Case No. 2024-T-0069

determining, among other things, if the expenses and treatment are reasonable and necessary.

{¶66} The endorsement defines "Who Is An Insured" as follows:

**B. Who Is An Insured**
    **1.** You while "occupying" or, while a pedestrian, when struck by any "auto".

    **2.** If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

    **3.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

{¶67} The endorsement defines "family member" as "a person related to you by blood, *marriage*, or adoption who is a resident of your household, including a ward or foster child." (Emphasis added.) It defines "[o]ccupying" as "in, upon, getting in, on, out or off." The Business Auto Coverage Form defines "you" as "the Named Insured shown in the Declarations."

{¶68} There is no dispute that Mr. Fisher is the Named Insured and that Mrs. Fisher is a "family member." Based on the foregoing provisions, the endorsement for Auto Medical Payments Coverage does not require an insured to be "occupying" a covered "auto" in all circumstances. Rather, the definitions of "Who Is An Insured" in Sections B.1. and B.2. also apply to a Named Insured or a "family member" who, "while a pedestrian," is "struck by any 'auto.'"

{¶69} During the summary judgment proceedings, Appellants submitted an affidavit from Mr. Fisher, who averred that just before Urick struck Appellants with his pickup truck, they had "moved about 1 foot off the traveled portion of the road and stood and waited for [Urick] to pass." The policy does not define the term "pedestrian." "In

23

Case No. 2024-T-0069

determining the plain and ordinary meaning of a word, courts may look to dictionary definitions of the word." *State v. Bertram*, 2023-Ohio-1456, ¶ 13. The dictionary definition of "pedestrian" is "a person going on foot: walker." *Merriam-Webster*, https://www.merriam-webster.com/dictionary/pedestrian (accessed March 3, 2025). Mr. Fisher's affidavit supports a finding that Appellants were "going on foot" while Urick struck them with his pickup truck. Accordingly, the record raises a genuine issue of material fact that precludes summary judgment in United's favor.

**{¶70}** Appellants' second assignment of error has merit. We reverse the trial court's grant of summary judgment to United on Appellants' claim for Auto Medical Payments Coverage and remand for further proceedings.

**{¶71}** For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed in part and reversed in part. This case is remanded for further proceedings consistent with the opinion.

MATT LYNCH, J.,

EUGENE A. LUCCI, J.,

concur.

24

Case No. 2024-T-0069